[Civ. No. 11981.   Third Dist.   Aug. 25, 1969.]

LARRY FLOURNOY, a Minor, etc., et al., Plaintiffs and Appellants, v. STATE OF CALIFORNIA et al., Defendants and Respondents.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein, Austin Clapp, Albert E. Levy and Ralph Golub for Plaintiffs and Appellants.

Harry S. Fenton, Robert F. Carlson, Kenneth G. Nellis and Ronald I. Harrison for Defendants and Respondents.

FRIEDMAN, Acting P. J.—Plaintiffs seek damages for the wrongful death of Cherre Flournoy, who was killed in a highway accident in November 1955. They charge the state with maintaining a highway bridge in a dangerous condition. Lapse of time is partially attributable to the 1961 legislation which suspended the prosecution of negligence actions against California public agencies pending consideration of new legislation governing public tort liability. In 1963 such legislation was enacted. (Gov. Code, § 814 et seq.)

On a prior appeal in this case we held that the new legislation governed the present lawsuit and ordered that plaintiffs have an opportunity to amend their complaint to allege facts conforming to its requirements. (*Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520 [41 Cal.Rptr. 190].) Returning to the trial court after that appeal, plaintiffs filed their third amended complaint. The state answered, then moved successfully for a summary judgment. Plaintiffs appeal from that judgment.

In the third amended complaint, plaintiffs allege that Clear Creek Bridge, located on Highway 89 in Shasta County and constructed in 1950, is 565½ feet long and has a concrete surface; that the flow of water under the bridge caused moisture to condense on the bridge, and in cold weather the wind caused ice to form on said bridge. The approach to the bridge for those traveling south is 17,642 feet of straight and level asphalt highway. Although the state had notice of numerous accidents as a result of the icy condition, it had not posted any warning signs indicating an icy condition or indicating the necessity of reducing speed; nor had it reconstructed or redesigned the roadway surface. On November 14, 1955, decedent was driving south on Highway 99 at a normal rate of speed, unaware of the dangerous icy condition on the bridge. She lost control of her car, creating an obstruction to the free passage of vehicular traffic traveling in the same direction. A cargo truck and trailer behind her likewise skidded on the ice and crashed into her vehicle, causing her death.

Government Code section 835 declares the basic principle of public liability for injury caused by the dangerous condition of public property. Under subdivision (a) of that section liability may exist where the public agency created the dangerous condition. Alternatively, subdivision (b) declares liability where the agency had notice of the condition in time to take protective measures, but failed to do so.[1]

---

[1]All statutory references are to the Government Code unless otherwise noted. Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of any employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the

There are a number of statutory exceptions to this basic principle, some of which are pertinent here. One is the immunity for failure to provide regulatory traffic signs or signals of the sort prescribed by the Vehicle Code. (§§ 830.4, 830.8.) Another is the immunity for injury caused by the approved plan or design of public works. (§ 830.6.) Another is the exemption for accidents caused by reasonably apparent weather conditions. (§ 831.) Another is the defense that the condition resulted from a reasonable governmental act. (§ 835.4.) Of these statutory defenses, three are crucial here and we set them out in full in the margin.[2]

Failure to protect against a dangerous condition includes not only an absence of remedies or safeguards, but also the absence of warning. (§ 830, subd. (b).) Parallel statutory rules in both sections 830.8 and 831 (fn. 2, *supra*) carve exceptions out of the "traffic sign" and the weather condition immunities where the danger would not be reasonably

---

injury to have taken measures to protect against the dangerous condition.''

[2]Section 830.6: ''Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefore or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor.''

Section 830.8: ''Neither a public entity nor a public employee is liable under the chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by a person exercising due care.''

Section 831: ''Neither a public entity nor a public employee is liable for an injury caused by the effect on the use of the streets and highways of weather conditions as such. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such effect if it would not be reasonably apparent to, and would not be anticipated by a person exercising due care. For the purpose of this section, the effect on the use of the streets and highways of weather conditions includes the effect of fog, wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets and highways resulting from weather conditions.''

apparent to a person exercising due care—in effect, where the condition creates a trap.[3]

The state filed an answer to the third amended complaint, setting up as separate defenses its immunity under section 830.6 (approved plan or design), sections 830.4 and 830.8 (failure to provide warning signs or devices), section 831 (weather conditions affecting highways), and section 835.4 (reasonable governmental decision). The state's motion for summary judgment was based entirely on the "design" immunity provided by section 830.6. In support of its motion it filed affidavits by engineers. Their general theme is exemplified by the following excerpt from the statement of W. C. Kiedaisch, a bridge design engineer: "In my opinion, the design and construction details of the subject bridges represent good engineering practice and the subject southbound bridge is of a well known and commonly used design. It is a standard four steel beam fixed span bridge with a concrete deck. The concrete deck and surface slab features have been used in over ninety percent of the bridges built from the 1940s up to and including the present time. The concrete surface wears very well and is not necessarily any less skid resistant than asphalt or other types of surfacing.

"Inherent in the design of this type of bridge and bridges in general is the fact that the bridge surface tends to frost or ice due to high humidity and freezing temperatures prior to the formation of frost or ice on the approaching highway since the latter has a higher road surface temperature from the sun's radiation and the heat provided by the ground."

The trial court granted the state's motion upon finding "that the condition [on] which plaintiff seeks to predicate liability was inherent in the design of the bridge and the surface of the bridge."

The trial court erred in granting the summary judgment, for the state's motion could affect only one of two available theories of recovery. On the record made by the pleadings and the state's affidavits, two alternative theories were presented: (1) The state was liable under subdivision (a) of section 835, for it had created a dangerous condition by constructing an ice-prone bridge; and (2) the state was liable under subdivision (b) of section 835, for it had knowledge of a dangerously icy condition (not reasonably apparent to a careful driver) and failed to protect against the danger by posting a warning.

---

[3]See official comment of California Law Revision Commission following section 830.8 in annotated codes.

Each of these theories postulated a separate, although concurring, cause of the accident. (See Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964) § 6.19, p. 202.) The first theory asserted causation in the state's active negligence in creating a danger, the second in the state's passive negligence in failing to warn of it.

█ A complaint may properly plead facts conforming to several theories of recovery, and a single count may embrace multiple theories. (*Crogan* v. *Metz*, 47 Cal.2d 398, 403 [303 P.2d 1029] ; 2 Witkin, Cal. Procedure (1954) pp. 1166, 1171; 1 Chadbourn, Grossman and Van Alstyne, California Pleading, pp. 698-702.) █ There may be two concurring, proximate causes of an accident. (*Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 602 [110 P.2d 1044] ; *Salvetti* v. *Byrd,* 222 Cal.App.2d 418, 421 [35 Cal.Rptr. 185] ; see Prosser on Torts (3d ed. 1969) pp. 241, 286-288.) Although usually set in operation by different actors, these separate, concurring causes may be produced by a single defendant, who is guilty of an affirmatively negligent act and of a passively negligent omission. A classic example occurs in *Gutirrez* v. *Southern Pac. Co.,* 174 Cal.App.2d 866, 873 [345 P.2d 326], where the injured plaintiff pleaded that the defendant railroad was actively negligent in operating its train and passively negligent in maintaining its tracks.

Here, too, the complaint alleged active and passive negligence of a single defendant (the creation of a dangerous condition and the failure to post a warning of it) as separate, concurring causes. Regardless of the availability of the active negligence theory, plaintiffs were entitled to go before a jury on the passive negligence theory, i.e., an accident caused by the state's failure to warn the public against icy danger known to it but not apparent to a reasonably careful highway user. (§§ 835, subd. (b) ; 830.8 ; 831.)

The defense argues that the plan or design immunity of section 830.6 ''prevails'' over any liability for a dangerous condition of public property under section 835. █ By force of its very terms the design immunity of section 830.6 is limited to a design-caused accident. (*Johnston* v. *County of Yolo,* 274 Cal.App.2d 46, 52 [79 Cal.Rptr. 33].) It does not immunize from liability caused by negligence independent of design, even though the independent negligence is only a concurring, proximate cause of the accident.[4]

---

[4]That a single accident may be caused concurrently by an immunizing plan or design and by an allegedly dangerous condition separate from

■ Moreover, the state failed to establish the prime requisite of the design immunity, that is, a design-caused accident. Ice on the roadbed was not an element or feature of the plan or design of Clear Creek Bridge. Section 830.6 protects the public from liability for reasonably conceived design choices made in the exercise of discretionary authority. (See *Cabell* v. *State of California,* 67 Cal.2d 150, 153 [60 Cal.Rptr. 476, 430 P.2d 34].) The ice on the Clear Creek Bridge was a consequence of the bridge's physical surroundings, not of a design choice. Both the plaintiffs' complaint and the state's affidavits agree in asserting that humidity incident to the bridge's location on and over a body of water caused condensation on the roadbed surface, which hardened into ice. Mr. Kiedaisch's affidavit, *supra,* points to no engineering choice as the source of the freezing phenomenon. He says that the Clear Creek Bridge is a ''standard'' bridge with a concrete deck, typical of 90 percent of the bridges built in the past several decades. He asserts that icing is inherent in the design of this type of bridge, then applies the same assertion to ''bridges in general.'' The statement signifies only that icing is a general characteristic of bridges over water. Since humid air was the physical origin of the ice, a bridge over a dry chasm would not possess this characteristic, although identical in structural detail to the bridge over Clear Creek. An ordinary concrete road in the protracted shade of tall trees might have this characteristic, although of quite different design. In none of these cases is ice or its lack a product of ''plan or design.'' It is a product of the project's physical surroundings.[5] Thus the state failed to establish the bridge's plan or design as a proximate cause of the accident.

The state points out that the expectable effect of normal weather conditions after the project's completion does not bar the design immunity, citing *Fackrell* v. *City of San Diego,* 26

---

design is recognized in a suggested jury instruction form appearing in Van Alstyne, *op. cit. supra,* § 6.83, pages 271-272.

[5]In an effort to show that discretionary engineering choices caused the icy roadbed, the defense asks us to take judicial notice of the engineering possibility (revealed in engineering periodicals) of defrosting roadbeds by means of embedded electrical cable or heated pipe. The implied *sequitur* is that the designers of the Clear Creek bridge made a discretionary choice not to install such defrosting devices. Generally, these engineering periodicals say that roadbed heating devices are operationally practical but too costly to use in any but very limited problem areas. Whatever the strain imposed in judicial notice of these possibilities, a court could hardly be persuaded, without resounding proof, that the design engineers of the division of highways consciously rejected electric heaters in the roadbed of Clear Creek Bridge in Shasta County.

Cal.2d 196 [157 P.2d 625, 158 A.L.R. 773], and *Cabell* v. *State, supra.* The *Fackrell* case antedated the present legislation, holding the public agency chargeable with notice of a dangerous condition which was "inherent" in the design because of expectable weather effects after the project's completion. *Cabell* was a specific application of section 830.6, holding that routine maintenance in conformity with the original design does not destroy the immunity.

■ Liability for creation of a dangerous condition (under § 830, subd. (a)) and immunity for designing it (under § 830.6) depend upon proximate causation. Both evoke parallel problems of causation. Ordinarily, questions of probable cause are for the jury. Where causation by plan or design is indisputable, a judge may sustain the defense by means of a summary judgment or nonsuit. (See, e.g., *Cabell* v. *State of California, supra,* 67 Cal.2d 150; *Becker* v. *Johnston,* 67 Cal. 2d 163 [60 Cal.Rptr. 485, 430 P.2d 43].) The conditions of the project in actual use after completion may generate intervening causative forces. ■ According to the general rule of negligence law, a defendant may be liable if his negligence is a substantial factor in causing the injury, and the presence of intervening causal forces does not relieve him from liability if those forces were foreseeable. (*Stewart* v. *Cox,* 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345] ; *Fuller* v. *Standard Stations, Inc.,* 250 Cal.App.2d 687, 691 [58 Cal.Rptr. 792].) This general concept is significant in applying both the immunity rule of section 830.6 and the liability rule of section 835, subdivision (a).

The *Cabell* case applies the general doctrine of intervening causation to the special problem of design causation, holding that routine maintenance after the project's completion is not a fresh, supervening cause. (See 43 State Bar J. 233; 19 Hastings L.J. 584.) Although *Fackrell* employed parallel reasoning, it is only of passing interest, since it dealt with notice, not causation. The concept of notice is indigenous to the problem of liability for failure to guard against a dangerous condition, but foreign to the rationale of liability for wrongfully creating it. (Van Alstyne, *op. cit. supra* pp. 203-204.) It is equally alien to the rationale of the statutory immunity for designing it. The design immunity of section 830.6 is a self-contained statutory rule, one which dispenses with the *Fackrell* rhetoric.

In this case plan or design was not the original cause of the accident. The design immunity is not an available defense.

Thus the classification of foreseeable weather effects as an integral phase of design is not significant here.

The state relies upon a dictum in *Becker* v. *Johnston, supra.* There the plaintiff, met with the defense of design immunity, argued that signs warning of a dangerous street intersection should have been provided at some point in time preceding the accident. The court observed that these signs ''admittedly would serve only to lessen the hazard which [the plaintiff] contends was created by the manner in which the intersection was designed, and for which section 830.6 extends immunity.'' (67 Cal.2d at p. 173.) Here, since the design immunity is unavailable, there is no problem of categorizing a warning sign as a diminution of a hazard created by the original design.

The state's inability to invoke the design immunity does not assure plaintiffs a tenable claim on the theory that the state ''created'' a dangerous condition by constructing an ice-prone bridge. The immunities for the ''effect'' of weather conditions (§ 831) and for reasonable governmental action (§ 835.4) are persuasive that the 1963 tort liability laws were not designed to bare public highway agencies to liability for creating highways and bridges which are vulnerable to ice. The complaint fails to state a tenable claim under section 835, subdivision (a). ■ It does state a cause of action (and triable issues exist) on the theory of negligent failure to post warning of a weather ''effect'' which posed substantial danger known to the state but concealed from the motorist, as delineated in sections 835, subdivision (b), 830.8 and 831. Thus the state's motion for summary judgment should have been denied.

The order is reversed with a direction to vacate the order granting a summary judgment.

Regan, J., and Janes, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 22, 1969. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.