[Civ. No. 10039. Fourth Dist., Div. Two. Apr. 16, 1971.]

MARGARET R. DE LA ROSA et al., Plaintiffs and Appellants, v. CITY OF SAN BERNARDINO, Defendant and Respondent.

### COUNSEL

Sprague & Milligan, G. Keith Sprague and Wallace B. Farrell for Plaintiffs and Appellants.

Stockdale, Peckham, Estes & Bruggeman and George Bruggeman, Jr., for Defendant and Respondent.

### OPINION

**TAMURA, J.**—This is a personal injury action against the City of San Bernardino (City) for injuries allegedly sustained by plaintiffs in a two-car intersection collision. Plaintiffs sued the City on the theory that the accident was proximately caused by a hazardous condition existing at the intersection. After both sides rested the court granted a defense motion for a directed verdict. Plaintiffs appeal from the judgment entered on the directed verdict.

On this appeal defendant's principal argument in support of the directed verdict is that plaintiffs' proof failed, as a matter of law, to establish the existence of a dangerous condition. In addition, defendant argues (a) that under the evidence it was entitled to the benefit of the "design or plan" immunity of section 830.6 of the Government Code and (b) that by virtue of section 835.4, subdivision (b), of the Government Code, the county was absolved of liability because the City had taken action to protect the public against risk of injury created by a dangerous condition, if it existed, and that the precautionary measure so taken was reasonable.[1]

██ A directed verdict is proper only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn

---

[1] The record reveals that the motion for directed verdict was made on the following grounds: (1) the "plan or design" immunity of a public entity under section 830.6 of the Government Code, and (2) the immunity of a public entity from liability for discretionary acts of its employees (Gov. Code, §§ 815.2 and 820.) Following argument on the motion, the trial judge granted it without comment other than that "under the law" he was compelled to do so. On this appeal, the City does not rely upon the second ground on which the motion was made. We shall therefore treat that ground as having been abandoned.

therefrom in plaintiff's favor, it can be said that there is no evidence of sufficient substantiality to support a plaintiff's verdict. (*Taylor* v. *Centennial Bowl, Inc.,* 65 Cal.2d 114, 120-121 [52 Cal.Rptr. 561, 416 P.2d 793]; *Sokolow* v. *City of Hope,* 41 Cal.2d 668, 670 [262 P.2d 841].) ▉ Phrased differently, a directed verdict may be sustained only when it can be said as a matter of law that no other conclusion is deducible from the evidence and that any other verdict would be so lacking in evidentiary support that the trial or appellate court would be compelled to set it aside as a matter of law. (*Spillman* v. *City etc. of San Francisco,* 252 Cal.App.2d 782, 786 [60 Cal.Rptr. 809]; *Scott* v. *John E. Branagh & Son,* 234 Cal. App.2d 435, 437 [44 Cal.Rptr. 384].)

The evidence pertinent to the issues raised on this appeal may be summarized as follows:

About 3 a.m. on December 11, 1966, plaintiffs (Ruben De La Rosa,[2] his wife Margaret, and Trinidad Caldera) were in a vehicle southbound on Pepper Street in the City of San Bernardino en route to the De La Rosas' home in Colton. Mr. De La Rosa was driving. Pepper Street intersects with Rialto Avenue within the City of San Bernardino. Pepper Street was controlled by stop signs; there were no stop signs on Rialto. The De La Rosa vehicle collided in the intersection with a vehicle westbound on Rialto driven by a Mr. Stansell. Mr. De La Rosa testified he did not see the stop sign or the warning signs preceding it and entered the intersection without stopping. Both vehicles were traveling approximately 35 miles per hour which was within the posted speed limit. There was no evidence of intoxication on the part of either driver.

Both Pepper Street and Rialto Avenue are two-lane paved streets. However, from a point about 88 feet north of the intersection the southbound side of Pepper Street has been widened to provide an additional lane for right turns onto Rialto. At the time of the accident a single stop sign located off the pavement on the northwest corner of the intersection controlled southbound traffic on Pepper. A white limit line with the word "Stop" had been painted across the southbound lane of Pepper at its entrance to the intersection. A railroad track crossed Pepper Street about 640 feet north of the intersection. A "Stop Ahead" sign was posted off the west edge of Pepper about 450 feet north of the intersection, and about 400 feet north of the intersection the legend, "Stop Ahead," was painted across the southbound lane.

There was a large 30-foot high walnut tree off the west edge of Pepper Street about 30 feet north of the point where the street widened for the

---

[2]Mr. De La Rosa was initially a party plaintiff but he dismissed his cause of action with prejudice. He is, therefore, not a party to the present appeal.

added right turn lane at Rialto. The tree had been there since 1937. North of the walnut tree along the west edge of Pepper there was a row of shrubbery. The intersection was illuminated by a street light at the northwest corner of the intersection. The light was mounted on an extension from a 30-foot pole.

Mr. Stansell, who had resided in the area for many years, testified the walnut tree and the shrubbery along the west edge of Pepper obstructed a southbound driver's view of the stop sign at Rialto. He testified there was very little visibility of the sign during the day and at night it could not be seen at all because by the time the driver reached a point where the sign was no longer obscured, the headlight beams would be beyond the stop sign. Conflicting inferences could be drawn respecting the legibility of the "Stop Ahead" pavement warning sign north of the intersection. There was evidence that the sign had been repainted in 1961. Mr. Stansell indicated that it was "dim." Mr. Wirts, City traffic engineer, testified that it was the practice to "refresh" such signs once a year but he was unable to produce the record showing the last time the sign had been repainted.

Mr. Herkelrath, a City employee who resides near the northwest corner of the intersection, testified there had been numerous accidents at the intersection involving vehicles traveling south on Pepper, that he had seen numerous vehicles failing to stop, and that at night he often heard screeching of brakes at the intersection. He complained to the City traffic department of the excessive number of accidents át the intersection stating that "there seemed to be some reason why people were going through the stop sign." He registered his complaint before the accident with Mr. Wirts' predecessor and, according to his recollection, also before the accident, with Mr. Wirts. In his deposition Mr. Wirts testified Mr. Herkelrath complained to him in the summer of 1966 (months before the accident) but at trial stated his deposition was incorrect and that he did not receive the complaint until after the accident.

The defense called Mr. Wirts who testified he had driven through the intersection going south on Pepper Street during the daytime on routine inspections and noted nothing unsafe about the intersection. He testified the right turn lane on Pepper was constructed in 1957 in accordance with a plan and design approved by his predecessor on May 24, 1957 (defendant's Exhibit "E"). He also testified concerning a "Job Request" dated September 8, 1961 (defendant's Exhibit "D") for certain work at or near the intersection. The latter included the installation of "paddle markers" and a "Pavement Narrows" sign immediately to the south of the railroad crossing on Pepper, the repainting of the "Stop Ahead" pavement warning on the southbound lane of Pepper, and the painting of a

double yellow center line on Pepper from the railroad crossing to the intersection at Rialto. Mr. Wirts did not know whether the stop sign located at the northwest corner of the intersection was the same one which was in place in 1961. For the limited purpose of impeaching Mr. Wirts' testimony that the intersection was not dangerous, plaintiff was permitted to show that subsequent to the accident the City installed an additional stop sign out in the street between the right turn lane and the normal southbound lane of Pepper.

The defense also called Mr. Severy, a research engineer employed by the University of California at Los Angeles. Mr. Severy testified he viewed the intersection and its environs and found that the stop sign was visible at a distance of from 110 to 120 feet from the intersection and that a motorist traveling at 35 miles per hour would be able to stop well within that distance. In his opinion the location of the stop sign did not constitute a dangerous condition.

I

Defendant contends that the evidence established, as a matter of law, the nonexistence of a dangerous condition at the intersection. The contention is without substance.

A "dangerous condition" as defined by statute is a condition "that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830.) The existence of a dangerous condition is usually a question of fact and may be resolved as a question of law only if reasonable minds can come to but one conclusion. (Gov. Code, § 830.2; *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183 [258 P.2d 834]; *Bakity* v. *County of Riverside*, 12 Cal.App.3d 24, 30 [90 Cal.Rptr. 541], and cases there cited.) In the instant case there was considerable evidence from which the jury could reasonably have found the existence of a dangerous condition.

There was evidence that the walnut tree and shrubbery on the west side of Pepper impaired the visibility of the stop sign to such an extent that it was barely visible during the day and could not be seen by a southbound motorist at night; there was evidence of numerous accidents at the intersection involving vehicles traveling south on Pepper; there was evidence from which it could be reasonably inferred that the "Stop Ahead" legend on the pavement was faded. Although the evidence indicated that the walnut tree and shrubbery were growing on adjacent property, it could reasonably be inferred from the evidence that their proximity to the highway and intersection exposed motorists to a substantial risk of

harm. ■ Condition of public property may be dangerous where the condition of adjacent property exposes those using public property to a substantial risk of harm. (*Briggs* v. *State of California,* 14 Cal.App.3d 489, 499 [92 Cal.Rptr. 433]; *Bakity* v. *County of Riverside, supra,* 12 Cal.App.3d 24, 30-31; *Branzel* v. *City of Concord,* 247 Cal.App.2d 68, 75 [55 Cal.Rptr. 167]; *Campbell* v. *City of Palm Springs,* 218 Cal.App.2d 12, 22 [32 Cal.Rptr. 164]; *Dudum* v. *City of San Mateo,* 167 Cal.App.2d 593, 597 [334 P.2d 968]; *Rose* v. *County of Orange,* 94 Cal.App.2d 688, 693 [211 P.2d 45].) ■ And although a public entity is not liable for failure to install traffic signs or signals (Gov. Code, §§ 830.4, 830.8), when it undertakes to do so and invites public reliance upon them, it may be held liable for creating a dangerous condition in so doing. (*Teall* v. *City of Cudahy,* 60 Cal.2d 431, 434 [34 Cal.Rptr. 869, 386 P.2d 493]; *Briggs* v. *State of California, supra,* p. 497; *Bakity* v. *City of Riverside, supra,* p. 31; *Hilts* v. *County of Solano,* 265 Cal.App.2d 161, 174 [71 Cal.Rptr. 275].)

The case of *Pfeifer* v. *County of San Joaquin,* 67 Cal.2d 177 [60 Cal. Rptr. 493, 430 P.2d 51], cited by defendant, is not controlling. In that case plaintiff was struck by an automobile while crossing a street between limit lines which had been painted on the pavement at a railroad crossing to indicate where vehicles were to stop when a train was crossing the highway. Plaintiff conceded the propriety of placing the limit lines and made no contention that their maintenance constituted negligence. He contended that the maintenance of an advance pedestrian pavement warning sign at an intersection some distance from the railroad crossing created a misleading and dangerous situation. In affirming a judgment of nonsuit, the court held that under the evidence "no reasonable person would conclude that such condition created an unreasonable risk of injury to the public." ■ In the present case one of the crucial factual issues was whether the position of the stop sign constituted a dangerous condition. From the evidence heretofore summarized, it is manifest that reasonable minds could well differ on that issue.

## II

Defendant urges that the directed verdict was proper because it was entitled to the benefit of the "design or plan" immunity of section 830.6 of the Government Code.

Section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improve-

ment by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

The immunity provided by section 830.6 immunizes a public entity from liability under section 835 of the Government Code for maintaining a dangerous condition of public property as long as the maintenance conforms to the original plan or design. (*Cabell* v. *State of California,* 67 Cal.2d 150, 152-153 [60 Cal.Rptr. 476, 430 P.2d 34, 34 A.L.R.3d 1154]; *Becker* v. *Johnston,* 67 Cal.2d 163, 172-173 [60 Cal.Rptr. 485, 430 P.2d 43].[3]) The design immunity. however, is limited to a "design-caused accident" and "does not immunize from liability caused by negligence independent of design, even though the independent negligence is only a concurring, proximate cause of the accident." (See *Flournoy* v. *State of California,* 275 Cal.App.2d 806, 811 [80 Cal.Rptr. 485]; *Johnston* v. *County of Yolo,* 274 Cal.App.2d 46, 51-52 [79 Cal.Rptr. 33].)

The immunity provided by section 830.6 is an affirmative defense which must be pleaded and proved by the public entity. (*Johnston* v. *County of Yolo, supra,* pp. 54-55; *Hilts* v. *County of Solano, supra,* 265 Cal.App.2d 161, 175; see *Teall* v. *City of Cudahay, supra,* 60 Cal.2d 431, 435.) In the present case defendant properly pleaded the defense of design immunity but failed to prove a fact crucial to that defense.

Plaintiffs' case was based on the theory that the maintenance of the stop sign in such a position that its visibility was obscured constituted a dangerous condition. Though not articulated with clarity, the City's immunity defense appears to rest on the theory that the stop sign was a part of the approved design of the intersection which design took into account the

---

[3]Plaintiffs urge that even though an accident may be design caused, if the public entity, after notice of the existence of the dangerous condition fails to correct the hazard, it is not entitled to the benefit of the immunity where liability is sought to be predicated under section 835, subdivision (b), of the Government Code. In support of their position plaintiffs cite *Douglas* v. *State of California* (Cal.App.) 60 Cal.Rptr. 694. However, the records of that case reveal that the reported decision was vacated on a petition for rehearing and that the final opinion was certified for nonpublication. We also note that in *Retzlaff* v. *State of California* (Cal.App.) 83 Cal.Rptr. 877, the court initially adopted the view that the plan or design immunity did not immunize a public entity from liability under section 835, subdivision (b), but, as in *Douglas, supra,* the reported decision was vacated on a rehearing and the final decision was certified for nonpublication.

existence of the walnut tree and shrubbery along the west edge of Pepper Street. The City introduced the plan under which the intersection was redesigned in 1957 (defendant's Exhibit "E") and the "Job Request" for certain work performed at or near the intersection in 1961 (defendant's Exhibit "D"). We have carefully examined those exhibits and Mr. Wirts' testimony explaining them but find nothing in either the exhibits or Mr. Wirts' testimony showing that the installation of the stop sign was a part of the work depicted on Exhibits "E" or "D." Although Mr. Wirts testified the stop sign was already in place in 1961, there is no evidence that it was installed under the plan of improvement shown on Exhibit "E." The diagram attached to Exhibit "D" bears a legend "Exist. RIR. Raise to 7'." Mr. Wirts testified on direct examination that "RIR" meant a stop sign but when plaintiffs' counsel asked him on cross-examination whether the stop sign was raised in 1961, an objection was interposed and sustained. In describing the work done under the 1961 "Job Request," Mr. Wirts mentioned the repainting of the "Stop Ahead" warning sign, installation of the double yellow center lines, and certain other work, but made no reference to the stop sign.

██ As the court aptly stated in *Johnston* v. *County of Yolo, supra,* 274 Cal.App.2d 46, at pp. 51-52: "The defense held out by section 830.6 rests upon a combination of three statutory elements: first, a causal relationship between the plan or design and the accident; second, the design's approval in advance of construction by a legislative body or officer exercising discretionary authority; third, a court finding of substantial evidence of the design's reasonableness. The second statutory element, approval, must occur first in chronological order. It is a vital precondition of the design immunity."

In the present case since the City failed to show that the installation or position of the stop sign was part of an approved design or plan of the intersection, it failed to establish a fact crucial to the design or plan immunity. Therefore, the directed verdict cannot be sustained on that ground.

### III

██ Defendant urges that the directed verdict was proper in that it was absolved of liability by virtue of section 835.4, subdivision (b), of the Government Code because it had taken reasonable action to protect motorists against the impaired visibility of the stop sign by providing "Stop Ahead" warning signs.

Section 835.4, subdivision (b), of the Government Code provides: "A public entity is not liable under subdivision (b) of Section 835 for injury caused

by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

Defendant points to Mr. Wirts' testimony that in his opinion the intersection was not dangerous because the advance warning signs would alert a motorist of the impending stop and urges that his testimony alone supported a finding that the precautionary measure taken by the City was reasonable. The flaw in the argument is the assumption that the question of "reasonableness" under section 835.4, subdivision (b), was a question of law for the court. That assumption is erroneous. From the evidence reviewed it is apparent that reasonable minds could differ as to whether the action taken by the City was reasonable under the circumstances. The issue therefore was one of fact which should have been submitted to the jury under appropriate instructions. (See *Johnston* v. *County of Yolo, supra,* 274 Cal.App.2d 46, 55-56.) Unlike section 830.6 relating to design immunity, section 835.4, subdivision (b), does not provide that the reasonableness of the action taken shall be determined by the "trial or appellate court."

For the foregoing reasons we conclude it was improper to grant the motion for directed verdict.

Judgment reversed.

Gardner, P. J., and Kerrigan, J., concurred.