[Civ. No. 32706. First Dist., Div. One. Nov. 18, 1974.]

GLENN E. SYKES, Plaintiff and Appellant, v.
COUNTY OF MARIN et al., Defendants and Respondents.

## COUNSEL

Carl B. Shapiro and Shapiro, Shapiro & Shapiro for Plaintiff and Appellant.

Buresh, Vallarino, Costamagna, Claxon & Dufficy and Howard K. Morehouse for Defendants and Respondents.

## OPINION

**BRAY, J.**[*]—Plaintiff appeals from judgment of the Superior Court of Marin County in favor of defendants.

*Questions Presented*

Does the maintenance without lights of an area as a parking lot by a school district or a county constitute a dangerous condition of the property under the Government Code so as to make the public entities liable to a parker injured by robbers?

*Record*

Plaintiff filed in the Marin County Superior Court a complaint against defendants County of Marin and Sausalito School District for damages for personal injuries received on Manzanita School premises due to alleged maintenance of a dangerous condition of the premises and alleged failure of defendants to warn plaintiff of dangers so as to protect him from persons of violent proclivities. Defendants answered generally denying the allegations of the complaint, alleging contributory negligence, assumption of risk, and alleging immunity under certain sections of the Government Code

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

hereinafter discussed. Defendants' motion for summary judgment was denied. After opening statement by plaintiff's counsel was made and testimony of some of plaintiff's witnesses was taken, the court granted defendants' motion for nonsuit and entered judgment in favor of defendants and against plaintiff.

*Facts*

There is no dispute as to the facts. The area involved is the Manzanita School premises in Marin County owned by defendant Sausalito School District under lease to the County of Marin as a community children's center. Sarah Ann Sykes, 15-year-old daughter of plaintiff and a high school student, had volunteered, on a regular basis with other students, to assist in the operation of this day center. One day a week she went to the center. It was the practice of her parents to see that at the end of the day, generally 5:30 or 6 p.m., she was picked up by one or the other parent. The parents felt that it was more advisable to provide a ride for their daughter than for her to use public transportation. On November 8, 1968, her father Glenn Sykes went to the center about 5:30 p.m. to pick her up. He parked his auto in the only place that was available, some distance away from the buildings in an exceedingly dark, unlighted area surrounded by fences and hedges. He walked up to the building, picked up his daughter, and together they walked back to his car. It was then between 5:30 and 6 p.m. Arriving at the car Mr. Sykes was attacked by one or more persons and badly injured, including receiving stab wounds throughout his abdomen and a perforated colon. He was hospitalized for a considerable period of time, incurred large medical and hospital expenses and lost considerable wages.

The parking lot where the attack occurred is a part of the community center and included in the lease from the Sausalito School District to the County of Marin.

NOT A "DANGEROUS CONDITION" UNDER THE GOVERNMENT CODE.

Section 835 of the Government Code provides in pertinent part ". . . a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee . . . created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a

sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Section 830 of the Government Code states " 'Dangerous condition' means a condition of property that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Section 815 provides, "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

■ At the trial the sole question presented was whether the failure to light the parking lot constituted a "dangerous condition" of the premises. Thus, unless the maintenance of the parking unit of the community center without lights constituted a "dangerous condition" under sections 835 and 830, defendants are immune from liability for plaintiff's injuries. As said in *County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 481 [105 Cal.Rptr. 374, 503 P.2d 1382], " 'In the absence of a constitutional requirement, public entities may be held liable only if a statute . . . is found declaring them to be liable.' "

The trial court, reviewing the Government Code sections and the authorities, properly concluded that the failure to provide lighting did not make defendants liable for the injuries received by plaintiff.

A study of the cases interpreting section 830 and its predecessor acts shows that they interpret section 830 as requiring the physical condition of the public property to be in a dangerous or defective condition involving reasonable risk to the public. In *Campbell* v. *City of Santa Monica* (1942) 51 Cal.App.2d 626 [125 P.2d 561], the plaintiff sued the city for personal injuries incurred when struck by a privately owned automobile being driven on a wide sidewalk known as the Promenade. In holding the city not liable the court said, ". . . the city is liable only for a 'dangerous or defective condition of [its] public streets . . . and property.' The scope of the protection afforded by the statute is against a physically dangerous or defective condition of streets and sidewalks. The statute is not designed to protect against moving objects such as motor vehicles upon streets or highways, but only as to risks directly due to a physically dangerous or defective street or sidewalk. Here the Promenade itself was neither dangerous nor defective. The harm in this case was caused, not by the condition

of the Promenade or the want of barriers or signs barring its use by vehicles without a permit, but by the negligent operation of a motor vehicle." (At pp. 629-630.)

In *Shipley* v. *City of Arroyo Grande* (1949) 92 Cal.App.2d 748 [208 P.2d 51] the plaintiff sued to recover from the city for injuries suffered when struck by an automobile which had jumped the curb. The plaintiff claimed that the sidewalk and curb were maintained in a dangerous and defective condition because the curb was only two inches high. In affirming the trial court's order sustaining the city's demurrer without leave to amend the complaint, the reviewing court said, "The Public Liability Act was not ordained for the purpose of protecting those who go upon city streets but only those who suffer by reason of a 'dangerous or defective' condition there. . . . [¶] In the instant case the harm was caused not by the condition of the curb but by the negligent operation of a motor vehicle by a third party. Liability of a city may not be created by the conduct of a motorist who disregards the law or negligently operates his car to the detriment of others." (At pp. 750-751.)

In *Bryant* v. *County of Monterey* (1954) 125 Cal.App.2d 470 [270 P.2d 897], the plaintiff sued for injuries incurred from fellow prisoners while incarcerated in the Monterey County jail, basing liability on the Public Liability Act which made a local entity liable for "a dangerous or defective condition" of its property. In upholding the sustaining of the county's demurrer to the complaint without leave to amend the reviewing court held that the statute is against a *physically* dangerous or defective condition of the public entity's property and applies only when a party is injured where the property is used by him in the ordinary, usual and customary use thereof.

*Grove* v. *County of San Joaquin* (1958) 156 Cal.App.2d 808 [320 P.2d 161] likewise was an action for damages for personal injuries sustained by an inmate in the county jail inflicted by a fellow inmate, the plaintiff contending that the county was liable under the statute which provided liability "resulting from the dangerous or defective condition of public property" in that the county did not properly supervise the men confined in the jail. Stating (p. 810), "[T]he complaint clearly indicates that the plaintiff's injuries were not due to any physical or defective condition of the jail itself," the reviewing court affirmed the judgment based on an order sustaining the county's demurrer without leave to amend. No support is found in the language of the act, the Law Revision Commission comments, or the cases, for the concept that the act was intended to insure users of public property *against* intentional criminal attacks by third parties.

The recent decision in *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855], is further support for upholding the judgment of nonsuit in the case at bar. In *Hayes* two young men were asleep at night on a beach belonging to the University of California, and were attacked by unknown persons. On appeal the parents urged that they should have been allowed to amend their complaint to state a cause of action for failure to warn of a dangerous condition of property, i.e., that undesirable persons frequented the beach committing dangerous crimes there. The court held that there was no governmental duty to warn against criminal conduct.

It should be noted that the cited cases and the instant case differ from a situation such as that presented in *Quelvog* v. *City of Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127] (city constructed access areas to sidewalks suitable for use by autoette vehicles, and advised autoette drivers they could operate vehicles on city sidewalks. Decedent killed due to negligent manner in which an autoette was driven along the sidewalk). There it was found that the public entity actively encouraged violations of the state law by the manner in which its property was maintained. The court stated, "We hold that the allegations of the actions of the City in creating and maintaining easy means of access to the sidewalks by autoettes without warning the operators to keep them off the sidewalks and the alleged encouragement of the operators to use them are sufficient to state a cause of action against the City for creating and maintaining a dangerous condition." (*Quelvog* v. *City of Long Beach, supra,* 6 Cal.App.3d 584, 591-592.)

At the trial the court asked plaintiff's counsel if he had found any case in which the intervention of a completely intervening act, such as that by the criminal assailants of plaintiff in the instant case, had caused a public entity to be held liable under the theory of maintaining a dangerous or defective condition of its property. The counsel replied that he had not, nor has he produced on this appeal any such authority.

Plaintiff has cited cases involving nongovernmental entities which obviously are not in point as such entities have no public immunity. Not applicable too are cases like *Baldwin* v. *State of California* (1972) 6 Cal. 3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121] (dangerous condition of an intersection); *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480] (inverse condemnation); *Stanford* v. *City of Ontario* (1972) 6 Cal.3d 870 [101 Cal.Rptr. 97, 495 P.2d 425] (failure of the city to shore up sewer ditch); *De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175] (obstruction of view of

stop sign at an intersection); *Flournoy* v. *State of California* (1969) 275 Cal.App.2d 806 [80 Cal.Rptr. 485] (dangerous condition of a bridge); *Sanders* v. *City of Long Beach* (1942) 54 Cal.App.2d 651 [129 P.2d 511] (failure to light steps in an auditorium); *Ziegler* v. *Santa Cruz City High Sch. Dist.* (1959) 168 Cal.App.2d 277 [335 P.2d 709] (negligent supervision).

In the instant case the harm was caused not by the condition of the parking lot but by the criminal acts of third parties. The fact that the parking area was not lighted is not the kind of dangerous condition contemplated by the Legislature in its legislation concerning defective or dangerous condition of public property. Nor is the legislation designed to protect against activities of third persons on public property who disregard the law. Here the property was neither dangerous nor defective.

Judgment affirmed.

Sims, Acting P. J., and Elkington, J., concurred.