[Civ. No. 68717. Second Dist., Div. Two. Aug. 20, 1984.]

SHIRLEY BRANCH, Plaintiff and Appellant, v. THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF TRANSPORTATION et al., Defendants and Respondents.

COUNSEL

Lee Belgum, Belgum & Belgum and Belgum, Wulfaberg & Belgum for Plaintiff and Appellant.

Robert F. Carlson, Joseph A. Montoya, Robert L. Meyer, Linda Cohen Harrel, Anthony J. Ruffolo and Robert W. Vidor for Defendants and Respondents.

OPINION

**ROTH, P. J.**—In a first amended complaint filed by appellant Shirley Branch it was alleged, inter alia, that:

"5. On or about September 9, 1981, defendants DEPARTMENT OF TRANSPORTATION, STATE OF CALIFORNIA, . . . and each of them, were the owners, operators, managers, securers, protectors, policers and/or maintainers of land, property and structures located at or near the intersection of Athens Way and 116th Street in the City of Los Angeles, Los Angeles County, California.[1]

"6. On or about September 9, 1981, defendant DEPARTMENT OF TRANSPORTATION, STATE OF CALIFORNIA . . . and each of them, so negligently and carelessly owned, operated, managed, secured, protected, policed and/or maintained said property, land and structures that their condition was unreasonably dangerous. Defendants, and each of them, had actual and constructive notice of the dangerous condition of the property, land and structures: Officials from neighboring cities had for years prior to September 9, 1981, complained to defendants, and each of them that the rundown condition of such property, land and structures was attracting and causing criminal activities, such as assaults, batteries and rapes, which otherwise would not have taken place; the state legislature had authorized in 1974 the removal or demolition of such structures as had become 'a threat to public health and safety' and had declared a purpose of 'abating a serious threat to the health and safety' existing thereat; defendants, and each of them, had at one time taken steps to ameliorate the dangerous conditions by securing the structures on said property and land against entry by placing boards over windows, by bolting doors closed and by taking other steps, but after such initial efforts had failed to maintain such safety steps and had permitted the boarding and doors to deteriorate and to be removed, opening the structures to foreseeable criminal activity; the particular structure to which plaintiff was taken as alleged hereunder was also missing safety measures previously in place due to the neglect and failure of defendants, and each of them, to inspect or maintain; numerous criminal activities were known to have occurred because of the lack of maintenance, including assaults on persons who had been abducted from other areas. The condition of said land, property and structures created a reasonably foreseeable risk of the kind of injury sustained by plaintiff. Defendants, and each of them, had actual and constructive notice of the dangerous condition of the property in

[1]The area described is part of the right of way acquired for purposes of constructing the Century Freeway.

sufficient time to have taken protective measures; such measures included, but are not restricted to maintaining existing protection, closing structures in a secure fashion, providing lighting, and providing fencing.

"7. On or about September 9, 1981, plaintiff was forcibly abducted and taken to one of the structures located at near said intersection and owned, operated, managed, secured, protected, policed and/or maintained by said defendants.

"8. At said time and place, and as a direct and proximate result of the dangerous condition and of the negligence and carelessness of defendants, and each of them, plaintiff was brutally attacked and sexually assaulted."

The general demurrer to the asserted cause of action by respondents the State of California acting by and through the Department of Transportation was sustained without leave to amend and the matter, as to them, was dismissed. This appeal followed. We affirm.

It is accepted by both sides, as indeed it must be, that a public entity is not liable for any injury, whether it arises out of an act or omission of the public entity or a public employee or any other person, except as otherwise provided by statute (see Gov. Code, § 815, subd. (a); *Cowing* v. *City of Torrance* (1976) 60 Cal.App.3d 757, 761 [131 Cal.Rptr. 830, 87 A.L.R.3d 137]) and that if a statutory exception to the general rule is to be found under the circumstances present it is that contained in Government Code section 835, which provides that: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Ample support for the proposition section 835 *does* serve as the foundation for a cause of action on the facts alleged in the complaint, says appel-

lant, is derived from the decision in *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484 [135 Cal.Rptr. 296]. Authority that the section *does not* provide that foundation, urge respondents, appears clearly in the opinion in *Sykes* v. *County of Marin* (1974) 43 Cal.App.3d 158 [117 Cal.Rptr. 466].

Were the question really one of choosing between these disparate and perhaps irreconcilable cases our resolution might become problematical. We are satisfied, however, the choice is not one necessary to be made, and that the matter before us depends, instead, on a fundamental consideration not involved in either *Slapin* or *Sykes*, namely, whether a proper understanding of Government Code section 830 is itself dispositive of the applicability of Government Code section 835, by virtue of the former's specification that the term "dangerous condition" means "a condition of property that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." We mean, of course, that if it is the case that what transpired respecting appellant was such that there was not present a dangerous condition as defined by section 830, her injury could not be encompassed within the ambit of section 835, for the reason, reiterated above, that tort claims against public entities are wholly statutory in nature and are permissible only when the requirements of enabling legislation have been satisfied.

Our conclusion is that on the fact alleged in appellant's complaint no dangerous condition as defined by section 830 was present.

So, when it is specified that the term "dangerous condition" means "a condition of property that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used," what is referred to, we think, is a risk of injury *to a plaintiff* who is using such property, in a manner in which it is reasonably foreseeable that it will be *used by that plaintiff.* (See, e.g., *Taeleifi* v. *Southern Cal. Rapid Transit Dist.* (1982) 130 Cal.App.3d 366 [181 Cal.Rptr. 697]; *Stone* v. *State of California* (1980) 106 Cal.App.3d 924 [165 Cal.Rptr. 339]; *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492 [147 Cal.Rptr. 898]; *Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118 [137 Cal.Rptr. 239]; *Slapin* v. *Los Angeles International Airport, supra,* 65 Cal.App.3d 484; *Sykes* v. *County of Marin, supra,* 43 Cal.App.3d 158; *Vedder* v. *County of Imperial* (1974) 36 Cal.App.3d 654 [111 Cal.Rptr. 728]; *Quelvog* v. *City of Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127]; *Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603 [69 Cal.Rptr. 20]. See also *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855].)

Here, as noted, what allegedly occurred in simplest terms was that appellant was abducted at an unspecified place and taken unlawfully and unwillingly to the properties owned or controlled by respondents where she was criminally assaulted. At no time was she of her own volition upon those properties, nor was she in any other fashion using them in the manner contemplated by section 830. Her presence there on the contrary was entirely involuntary, however regrettable and unfortuitous it may also have been. Under these circumstances, there could not have existed that kind of dangerous condition which is a prerequisite to liability on the part of respondents.

The order appealed from is affirmed.

Compton, J., and Gates, J., concurred.

A petition for a rehearing was denied September 11, 1984, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1984. Bird, C. J., was of the opinion that the petition should be granted.