Filed 8/11/21  Rodas v. Dept. of Transportation CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CRUZ VIDAL AREVALO RODAS et al., as Personal Representatives, etc., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DEPARTMENT OF TRANSPORTATION, <br><br> Defendant and Respondent. | D078581 <br><br><br> (Super. Ct. No. 1-14-CV-267867) |
| CRUZ VIDAL AREVALO RODAS et al., as Personal Representatives, etc., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DEPARTMENT OF TRANSPORTATION, <br><br> Defendant and Appellant. | D078583 |

CONSOLIDATED APPEALS from an amended judgment and a postjudgment order of the Superior Court of Santa Clara County, James L. Stoelker, Judge. (Retired Judge of the Santa Clara Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) In D078583, plaintiff's cross-appeal dismissed, amended judgment affirmed in part, and reversed and remanded in part. In D078581, postjudgment order vacated and appeal dismissed.

Jeanne Scherer and Erin E. Holbrook, Chief Counsel, G. Michael Harrington, Deputy Chief Counsel, Lucille Y. Baca, Assistant Chief Counsel, David Sullivan, Derek S. VanHoften, Layla Labagh for Defendant, Appellant, and Cross-Respondent.

Buty & Curliano, Jason J. Curliano and Ondrej Likar, for Plaintiff, Respondent, and Cross-Appellant.

Case No. D078583 is an appeal and a cross-appeal from an amended judgment following a jury trial. The State of California Department of Transportation (Caltrans) is the appellant and cross-respondent; and Cruz Vidal Arevalo Rodas & Gladys H. Ascencio Carpio, as personal representatives of the Estate of Kevin Josue Rodas Carpio, are the respondents and cross-appellants. Case No. D078581 is an appeal from a postjudgment order. Cruz Vidal Arevalo Rodas & Gladys H. Ascencio Carpio, as personal representatives of the Estate of Kevin Josue Rodas Carpio, are the appellants, and Caltrans is the respondent. The two appellate cases have been consolidated for all purposes.

## I. INTRODUCTION

Early one morning in January 2014, 17-year-old Kevin Carpio was walking to school in Sunnyvale. He was walking on a sidewalk next to the

Lawrence Expressway, and as he crossed an onramp to southbound U.S. 101 in a marked crosswalk, a car being driven by Patrick Aubin (the driver) struck him. Sadly, Carpio suffered catastrophic injuries and, during the pendency of this appeal, passed away.[1]

Plaintiff filed the underlying action against Caltrans and others, which resulted in a substantial judgment against Caltrans. As relevant to this appeal, Plaintiff alleged that the intersection of the Lawrence Expressway and the onramp to U.S. 101, as well as the surrounding area, constituted a dangerous condition of public property under Government Code section 835.[2] At trial, Caltrans's principal defense was the design immunity provided by section 830.6. This statutory defense reflects a legislative intent to insulate discretionary planning and design decisions by responsible public officials from review in tort litigation. (*Baldwin v. State of California* (1972) 6 Cal.3d 424, 434.) At trial, Plaintiff's principal reply to this defense was that, regardless of dangerous condition(s) associated with the *design* of the interchange and surrounding area, the evidence supported a finding of *non-design-related* dangerous conditions created by Caltrans under section 835,

---

[1] Prior to Carpio's death, the action was being prosecuted by Cruz Vidal Arevalo Rodas, as Carpio's guardian ad litem. Following Carpio's death, the probate court appointed Carpio's parents as special administrators with specified powers. Based on this appointment and a formal motion, the appellate court substituted Cruz Vidal Arevalo Rodas & Gladys H. Ascencio Carpio, as personal representatives of the Estate of Kevin Josue Rodas Carpio, in place of plaintiff/respondent/cross-appellant Kevin Josue Rodas Carpio. We shall use "Plaintiff" to mean either Carpio prior to his death or the personal representatives of his estate, depending on the context.

[2] Subsequent unidentified statutory references are to the Government Code.

3

subdivision (a)—i.e., a dangerous condition not subject to section 830.6's design immunity. More specifically, Plaintiff contended that the following negligent acts by Caltrans, *unrelated to design*, resulted in dangerous conditions which caused substantial harm to Plaintiff: the failure to maintain the pedestrian crosswalk and surrounding area; and the failure to warn of a concealed dangerous condition at the crosswalk.

As we explain in our de novo review of Caltrans's appeal from the judgment (D078583), the jury's answers to the special verdict form are inconsistent as to Caltrans. We cannot tell whether the award of damages was based on a dangerous condition that was negligently designed (and, thus, subject to § 830.6 immunity) or based on a failure to maintain the area surrounding the roadway interchange (and, thus, not subject to § 830.6 design immunity) or based on a dangerous condition that resulted from a failure to warn of the dangerous condition. The trial court interpreted the jury's special verdict to allow *both* for immunity to Caltrans for dangerous conditions associated with the design of the crosswalk and the surrounding area *and* for liability and damages against Caltrans based on dangerous conditions the court considered not associated with the design of the crosswalk (*viz.*, failure to warn or failure to maintain). In doing so, the court erred, because from the jury's answers to the questions on the special verdict, there is no way of knowing: (1) which, of multiple, conditions the jury found to be dangerous for purposes of section 835; and, therefore, (2) whether such dangerous condition(s) allowed for the application of the design immunity defense by Caltrans (§ 830.6) or for liability against Caltrans (§ 835).

As we also explain, the court lacks jurisdiction over Plaintiff's cross-appeal from the judgment (D078583), because Plaintiff is not aggrieved by the judgment, and there is no postjudgment order from which he could have

4

filed a protective cross-appeal. Nonetheless, we have deemed the arguments in Plaintiff's cross-appellant's opening brief as part of his respondent's brief in Caltrans's appeal from the judgment and have deemed the arguments in Caltrans's cross-respondent's brief as part of its reply brief in its appeal from the judgment.

Finally, Plaintiff appealed from a postjudgment order in which the trial court denied Plaintiff's motion to enforce the terms of Caltrans's elected periodic payment schedule (D078581). As we explain, because the judgment against Caltrans from which the periodic payments are to be made will be reversed, the order regarding enforcement of periodic payments under the judgment is moot.

Accordingly, in the parties' appeals from the judgment (D078583), we will dismiss the cross-appeal; reverse the judgment and remand for a new trial as to Caltrans; and otherwise affirm the judgment. In Plaintiff's appeal from the postjudgment order (D078581), we will vacate the order and dismiss the appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. *The Accident*

At the intersection of the Lawrence Expressway and U.S. 101 in Sunnyvale, there is an onramp to southbound U.S. 101 from the northbound Lawrence Expressway.[3] Both highways have four lanes going in each

---

[3] At the interchange of the Lawrence Expressway and U.S. 101, the Lawrence Expressway runs north-south. U.S. 101 generally runs north-south, but at this intersection, it runs northwest-southeast, such that the onramp at issue allows a driver to travel from the northbound Lawrence Expressway to southbound U.S. 101. The construction of the Lawrence Expressway – U.S. 101 interchange (Project) was completed in approximately 2000.

5

direction, and the onramp has three lanes, each of which can be accessed from a fifth "exit only" lane on the far righthand side of the northbound Lawrence Expressway. More than 20 feet into the onramp to U.S. 101 off the Lawrence Expressway is a marked pedestrian crosswalk which connects the sidewalk along the east side of the expressway on both sides of the onramp.[4]

The accident occurred in the crosswalk shortly before 7:00 a.m. on a dark wet morning in January 2014. Plaintiff, then 17 years old, was walking to school on the sidewalk adjacent to the northbound Lawrence Expressway. As he crossed the onramp to U.S. 101 in the marked crosswalk, he was struck by a car and seriously injured.

The driver of the car that hit Plaintiff was a 24-year-old man who had just finished his work as a security guard—a shift that began at 10:00 p.m. the evening before the accident and ended at 6:45 a.m. the morning of the accident. Minutes after leaving work, as the driver proceeded north on the Lawrence Expressway near the U.S. 101 interchange, due to darkness, rain, and fog, the driver had turned on both the headlights and windshield wipers of his car.

The driver had driven this route previously and was familiar with it. On that stretch of the Lawrence Expressway, the speed limit was 50 miles per hour, and he was travelling at a rate of approximately 45 miles per hour. As he approached the onramp to southbound U.S. 101, the driver signaled, moved over to the far right exit lane, and decreased the vehicle's speed to

---

[4] Consistent with Plaintiff's complaint in this action, we understand the public property at issue in this case to be "the sidewalk adjacent to [the] intersection of [the] northbound Lawrence Expressway and the freeway onramp to southbound Interstate Route [*sic*] 101 . . . and [the] surrounding area."

approximately 35 miles per hour. From his familiarity with the route and the signage, the driver was aware of pedestrians on the sidewalk and the crosswalk on the onramp, although he previously had never seen a pedestrian in the crosswalk or in the general vicinity of the crosswalk.

As the driver prepared to enter the onramp to U.S. 101, he was paying "full attention" to driving as safely as he could and did not see anything in the roadway. In the "split second" before the impact of striking Carpio—who was walking in the crosswalk—the driver realized that something was in front of him. Only after Carpio hit the driver's windshield and the driver pulled over and got out of his car to see what had happened did the driver realize that his car had struck Carpio. Carpio suffered catastrophic injuries, leaving him in what an expert at trial described as "a persistent or permanent vegetative state" following "a very severe . . . traumatic brain injury."

B.    *The Pleadings*

Plaintiff filed the underlying action against Caltrans, the City of Sunnyvale, the County of Santa Clara, the driver, and the owner of the vehicle that struck him. In the first cause of action, Plaintiff alleged negligence against the driver and the owner of the vehicle. In the second cause of action, Plaintiff alleged a dangerous condition of public property against Caltrans, the city, and the county.

All that is before us in this appeal is Plaintiff's cause of action against Caltrans. The allegations against Caltrans include:

- Caltrans "owned, operated, designed, constructed, maintained, inspected, repaired, cleaned, and controlled the intersection, pedestrian crosswalk and surrounding area at the [property] at the time of, and before the [accident]";

7

- Caltrans "w[as] negligent and careless in the design, construction, maintenance, inspection, repair, and control of the [property]";
- Caltrans's acts or omissions resulted in the following dangerous conditions, "separately and in combination":
  - "Failure to warn of, prevent, and/or correct the dangerous condition";
  - "Dangerous placement of the pedestrian crosswalk";
  - "Dangerous and confusing placement of signs before the pedestrian crosswalk";
  - "Dangerous and confusing placement of roadway markings";
  - "Creating a confusing roadway in terms of signage, roadway markings, and traffic lights near the pedestrian crosswalk";
  - "Failure to place proper warnings, signs, traffic control devices, and/or other indications of the pedestrian crosswalk";
  - "Failure to provide and/or maintain adequate signs or warnings";
  - "Failure to provide stop signs or traffic lights at the intersection of northbound Lawrence Expressway and the onramp to southbound Interstate 101 [*sic*]";
  - "Dangerous placement of the pedestrian crosswalk beyond the crest of an incline";
  - "Dangerous placement of trees and bushes";
  - "Failure to properly maintain the surrounding bushes and trees";
  - "Failure to warn or redirect pedestrians away from crossing the onramp";
  - "Failure to maintain the paint on the pedestrian crosswalk"; and
  - "Failure to [ensure] . . . visib[ility] through adequate lighting";

8

- These dangerous conditions "created a trap for members of the public using the roadway in a reasonably foreseeable way," and Caltrans "failed to adequately warn users, including pedestrians and drivers, of the trap"; and

- Caltrans "should have prevented the dangerous condition" either "by having in place a reasonable inspection system that would have revealed the dangerous condition" or, if Caltrans had such a system, it "did not use reasonable care in maintaining and operating the system."

Caltrans answered the complaint by filing a general denial (Code Civ. Proc., § 431.30, subd. (d)) and asserting 23 affirmative defenses. As relevant to the issues on appeal, among these defenses, Caltrans alleged design immunity under section 830.6 and limited signage immunity under section 830.8.[5]

C. *The Trial*

Before we discuss the evidence at trial, we first provide some background as to the legal issues at trial. In describing the evidence, we limit it to the evidence relied on by the parties in their appellate briefing.

---

[5] Caltrans's sixth affirmative defense provides in full: "The alleged condition of property was created by construction in accordance with a plan or design of construction or of improvement to public property, and said plan or design was approved in advance of construction or improvement by an officer or employee of a public entity vested with discretionary authority to approve said plan or design or was prepared in conformity with standards previously so approved, and said approvals were reasonable; therefore [Caltrans] is not liable to Plaintiff pursuant to Government Code § 830.6."

Caltrans's eighth affirmative defense provides in full: "The condition of property was allegedly the result of a failure to provide regulatory and/or warning signals, signs, markings, or other devices, and therefore [Caltrans] is not liable to Plaintiff pursuant to Government Code §§ 830.4 and 830.8."

9

1. *Issues*

As we introduced *ante*, Plaintiff alleged liability for a dangerous condition of public property under section 835, and Caltrans's principal defense was design immunity under section 830.6.

     a. *Dangerous Condition of Public Property (§ 835)*

Pursuant to the Government Claims Act (§ 810 et seq.), public entities are liable only to the extent provided by statute. (§ 815, subd. (a); *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.)

As applicable here, section 835 provides the basis for liability in an action against a public entity for an injury caused by the dangerous condition of public property.[6] To establish liability under section 835, a claimant must prove the following elements: (1) The public property was "in a dangerous condition at the time of the injury"; (2) the injury was "proximately caused by the dangerous condition"; (3) the kind of injury that occurred was "reasonably foreseeable" as a consequence of the dangerous condition; and (4) either (a) a public employee, within the scope of employment, created the dangerous condition by a "negligent or wrongful act or omission" or (b) the public entity had "actual or constructive notice of the dangerous condition" a sufficient time before the injury to have taken reasonable measures to protect against the dangerous condition.

---

[6] The Government Claims Act defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

b.    *Design Immunity (§ 830.6)*

In addition to all affirmative defenses available to private party defendants in similar situations (§ 815, subd. (b)), a public entity has available to it certain statutory defenses and statutory immunities (see 2 Van Alstyne et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2021) §§ 12.61-12.101, pp. 12-88 – 12-144).  The statutory design immunity provided by section 830.6 is principally at issue here.

To establish design immunity—by which a public entity is generally not liable for injuries caused by a dangerous condition of public property—the defendant must prove the following three elements:  (1) "a causal relationship between the plan or design and the accident"; (2) "discretionary approval of the plan or design prior to construction"; and (3) "substantial evidence supporting the reasonableness of the plan or design."  (*Cornette v. Dept. of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*); see § 830.6.)  The third element—i.e., reasonableness of the approval process of the plan or design—is an issue decided by the court, not the trier of fact.  (*Cornette*, at p. 66; *Menges v. Dept. of Transportation* (2020) 59 Cal.App.5th 13, 21.)

Section 830.6's immunity is not permanent.  It may be lost if the party opposing the application of the defense can establish that "changed physical conditions" of the plan or design produced the dangerous condition at issue. (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 737 (*Alvarez*), abrogated on another point in *Cornette, supra*, 26 Cal.4th at pp. 67, 74 & fn. 3.)  The party opposing the application of the defense has the burden of establishing the loss of the immunity.  (*Cornette*, at p. 72.)

2.    *Plaintiff's Case*

Plaintiff summarizes the evidence at trial for which he contends there were *four specific* dangerous conditions.

11

*First*, Plaintiff describes certain evidence at trial which he contends supports a finding that "[t]he unkempt and overgrown shrubbery and bushes" were a dangerous condition. (Bolding omitted.) Next to the roadway where the driver struck Plaintiff (i.e., to the right of the sidewalk along the east side of the Lawrence Expressway and the onramp to U.S. 101), there are trees, bushes, and groundcover. In places, this vegetation partially covered or cast shadows on street signs (including signs warning drivers of pedestrians and the crosswalk across the onramp to U.S. 101) and blocked a clear view of the onramp from the right-turn lane. According to the Caltrans supervisor responsible for landscaping maintenance at and around the Project, there was no schedule for maintenance; work was often prompted by a complaint from a member of the public.

*Second*, Plaintiff describes evidence at trial which he contends supports a finding that "[t]he faded crosswalk lines" were a dangerous condition. The jury was shown photographs of the crosswalk taken approximately three weeks after the accident. Caltrans's maintenance area superintendent, charged with the responsibility of overseeing the four supervisors who manage all nine Bay Area counties (each of whom supervises six or seven employees) testified as to the condition of the crosswalk at issue.[7] He stated that, prior to the January 2014 accident, the crosswalk lines had not been repainted during the 14 years since they were installed. He testified as to the importance of drivers being able to see road markings like the crosswalk. In particular, he explained that the painted lines provide "retro reflectivity," which is what occurs when a driver's headlights "touch the pavement

---

[7] Caltrans had previously designated the superintendent as the person most knowledgeable on the issue of roadway maintenance.

markings, the striping[,] and the pavement markers[;] and they reflect the light back toward the occupants in the vehicle."[8]  In fact, "a primary part" of the job of a Caltrans maintenance crew is to refresh roadway markings like the crosswalk at issue here.  Caltrans maintenance crews conduct yearly nighttime inspections of such roadway markings.

Plaintiff then tells us about the testimony from the supervisor of the six-person maintenance crew from this area.  The supervisor acknowledged that he never told his crew members that they should report any road markings or other conditions that they believed to present a danger to pedestrians or drivers.  According the supervisor, reporting dangers is not part of a crew member's job; a crew member's job is to do the actual maintenance, as directed by a supervisor.

Testimony from this supervisor's crew members established that they did not receive any training from Caltrans on how to conduct inspections— i.e., how to measure sight distances or retro reflectivity.  Crew members were told to use their own best judgment when conducting inspections.  One crew member testified that he had never used "this concept of retro reflectivity" when, during the night inspections, he determined whether roadway markings needed to be refreshed.

Plaintiff also discusses expert opinion testimony regarding the need for Caltrans to have a formal training program for its maintenance employees— including, specifically, training on the standards to be used when evaluating roadway markings.

---

[8]     "Retro reflectivity" is a term that appears in the Caltrans maintenance manual.

*Third*, Plaintiff describes evidence at trial which he contends supports a finding that "[t]he painting of the crosswalk lines in relation to the crest in the roadway" was a dangerous condition. (Bolding omitted.) As background, the California Highway Patrol officer who investigated the scene of the accident testified that "a small crest" on the onramp "hid the lines on the crosswalk" where the accident occurred. Plaintiff then refers us to expert opinion testimony from his civil engineer that the placement of the crosswalk in relation to the crest of the road was not a design feature of the Project. Plaintiff next tells us about the deposition of the Caltrans Project engineer, who testified that, based on his memory from 20 years earlier, he did not recall who decided to put a crosswalk on the onramp and what process, if any, was involved in deciding whether to place a signal device on the onramp by the crosswalk. Finally, Plaintiff relies on the Caltrans's roadway engineering expert, who agreed with the statement from the California Highway Patrol officer that the location of the crosswalk lines was behind the crest of the onramp.

*Fourth*, Plaintiff describes evidence at trial which he contends supports a finding that the lack of "adequate roadway markings and signage" was a dangerous condition. Plaintiff's expert on "human factors engineering or ergonomics or engineering psychology" first opined that, because the driver here "had been through the location so many times and not encountered a pedestrian," the driver had lost any expectancy that he would encounter a pedestrian. The expert explained that traffic signs and roadway markings increase a driver's expectancy and that the following conditions contributed to the driver's lack of expectancy in this case: The warning sign closest to the crosswalk was "obscured by shrubs and plants"; the lines on the crosswalk were "badly faded"; and the area lacked signage warning of the distance to

14

the crosswalk.[9]  The expert also provided his opinions as to what changes could be made to increase a driver's expectancy of a crosswalk on the onramp to U.S. 101.

Consistent with this evidence of four specific conditions, the bulk of Plaintiff's counsel's closing argument focused on what Plaintiff contended were dangerous conditions that resulted from Caltrans's failure to maintain the property and Caltrans's failure to warn of the dangerous condition. Counsel also argued to the jury that, because the plans and designs for the Project did not include faded crosswalks or overgrown shrubbery, dangerous conditions resulting from failures to maintain or to warn are not subject to the defense of design immunity.  More specifically, when discussing with the jury question No. 6 of the special verdict ("Was the dangerous condition . . . in the plan or design for the roadway?"), counsel explained:  "I think that's an easy 'No,' because a failure to maintain is not in the plan or design."

However, the foregoing *four* conditions that Plaintiff tells us are dangerous do not include *all* of the conditions that Plaintiff contended at trial were the dangerous conditions for purposes of Caltrans's liability.  For example, and without limitation, on direct examination, Plaintiff's human factors expert opined that the location of the crosswalk on the onramp to U.S. 101—i.e. "mid-block"—was a dangerous condition by itself.  Likewise, in closing argument, when discussing with the jury question No. 1 of the special verdict ("Was the onramp from northbound Lawrence Expressway to southbound U[.]S[.] 101 in a dangerous condition at the time of the

_____

9    The expert further testified that the two pedestrian crossing signs along the Lawrence Expressway just before the onramp to U.S. 101 were "obsolete," although he did not tie that fact into his opinions regarding the driver's expectancy.

15

accident?"), Plaintiff's counsel specifically explained to the jury: "This onramp includes the onramp, crosswalk, the shrubbery, the lack of signs . . . [, and the] lack of shark teeth."

### 3. *Caltrans's Case*

On appeal, Caltrans summarizes the trial evidence it relies on for the defense of design immunity under section 830.6. Caltrans first refers us to evidence of a specific dangerous condition (namely, that the location of the crosswalk was included in the plan or design) and then explains the discretionary approval process that preceded the construction of the Project that included this condition.

In trial proceedings prior to empaneling the jury, the court received evidence and ruled that, for purposes of Caltrans's design immunity defense (§ 830.6), Caltrans established the reasonableness of the design approval process for the Project. (See *Cornette*, *supra*, 26 Cal.4th at p. 66 [court determines as a matter of law whether substantial evidence supports reasonableness of plan or design].) The court properly left for the jury, as the fact-finder: (1) the remaining two elements for an application of the design immunity defense (see *ibid.*); as well as (2) the elements at issue for Plaintiff's claims of sufficiently changed physical conditions to establish the loss of this defense (see *Alvarez*, *supra*, 79 Cal.App.4th at p. 737; *Cornette*, at p. 72).

With regard to Caltrans's burden of proving the remaining elements of the design immunity defense, Caltrans directs us to the trial testimony from its Project engineer. In response to Plaintiff's human factors expert who testified that the *location of the crosswalk* on the onramp to U.S. 101 was a dangerous condition, the Project engineer testified that the *location of the crosswalk* was determined by specific information contained in the Project

16

plans—namely, "the geometry of the interchange, location of the lanes, the location of the sidewalks, [and] the placement of the wheelchair ramps."[10] After identifying his signature on the top of the plans, this witness identified where the plans contained "the location of the crosswalk that's at issue in this case." He also explained that the Project plans—in particular, a "profile sheet" Caltrans created for the contractor—directed the location of the vertical curve, which included the crest, on the onramp.[11]

Caltrans also discusses testimony from its civil engineering and traffic safety expert, who interpreted one specifically identified page of the Project plans that "account[ed] for the vertical curve"—which included "the crest."

Finally, Caltrans again relies on evidence from its Project engineer, who explained that, as the resident engineer for the Project, he was "the field engineer responsible for the administration of the contract and making sure that the project is built according to the plans, specifications, calculations and the standards." He further testified that his signature on the as-built plans indicated that: "headquarters approved the set of plans and they were transferred to construction to be built"; the plans were "prepared according to standards and . . . prepared under [his] supervision"; and "the [Project] was built according to the plans and according to the . . . California standards [at] that time."

In closing argument, Caltrans's counsel told the jury:

10      The Project engineer identified trial exhibit No. 507 as the 245-page "as-built" "project plans."

11      According to the Project engineer, the "crest of the [on]ramp" is the "inflection point" on the "vertical curve"; and a vertical curve is required because the Lawrence Expressway goes over U.S. 101, and the onramp to U.S. 101 must account for this difference in elevation.

17

"On the . . . issue of design immunity, basically, there's two elements that are involved in play here.  One deals with: . . . w[ere] the features that Plaintiff is complaining about that caused this accident [—] that is[,] the foliage, the crosswalk in relation to the crest, and the signage — were those present on the plans?  [¶]  And I would say yes, they were.

". . . [T]he next one will be[:] . . . was the dangerous condition that was a substantial factor in cau[sing] harm to Plaintiff in the plan or design for the roadway? . . . [¶] So was the crosswalk located [*sic*] included in the plans? Yes.  [¶]  Exhibit 507-100.

"Was the foliage included on plans?  Yes.  [¶]  Exhibit 507-162.

"Was the vertical curve shown on the plans?  Yes.  [¶] Exhibit 507[-0]16.  [¶] . . . [¶]

"The sign plan—that's Exhibit 640—shows the general location of . . . the signs.

"The lighting plan, with the overhead lights, that's 507-177.

"So all of those features were present in the plans."

4.    *The Special Verdict and the Judgment*

The special verdict form asked 16 questions, and the jury answered them as follows:

"1.  Was the onramp from northbound Lawrence Expressway to southbound U[.]S[.] 101 in a dangerous condition at the time of the accident?

"  X        Yes                   _____        No

*"If your answer to Question 1 is yes, then answer Question 2.  If you answered no, enter a zero next to the State of California/Caltrans' name in Question 16 and then move to Question 11.*

"2.  Did the dangerous condition create a reasonably foreseeable risk of the kind of injury that occurred?

"  X        Yes                   _____        No

18

*"If your answer to Question 2 is yes, then answer Question 3. If you answered no, enter a zero next to the State of California/Caltrans' name in Question 16 and then move to Question 11.*

"3. Did the negligent or wrongful conduct of the State of California/Caltrans' employee(s) acting in the scope of his/her/their employment create the dangerous condition?

   " __X__   Yes     _____   No

 "or

"Did the State of California/Caltrans have actual or constructive notice of the dangerous condition for a long enough time to have protected against it?

   " __X__   Yes     _____   No

*"If your answer to either option in Question 3 is yes, then answer Question 4. If you answered no to both options, enter a zero next to the State of California/Caltrans' name in Question 16 and then move to Question 11.*

"4. Was the act or omission that created the dangerous condition reasonable?

   "_____   Yes     _____   No

 "or

"Was the State of California/Caltrans acting reasonably in failing to take sufficient steps to protect against the risk of injury?

   "_____   Yes    __X__   No

*"If your answer to either option in Question 4 is no, then answer Question 5. If you answered yes to both options, enter a zero next to the State of California/Caltrans' name in Question 16 and then move to Question 11.*

"5. Was the dangerous condition a substantial factor in causing harm to Kevin Carpio?

   " __X__   Yes     _____   No

*"If your answer to Question 5 is yes, then answer Question 6. If you answered no, enter a zero next to the*

19

*State of California/Caltrans' name in Question 16 and then move to Question 11.*

"6. Was the dangerous condition that was a substantial factor in causing harm to plaintiff in the plan or design for the roadway?

"  X      Yes             _____      No

*"If your answer to Question 6 is yes, then answer Question 7. If you answered no, move to Question 11.*

"7. Was the dangerous condition in the plan or design for the roadway approved by a person exercising discretionary authority to approve the plan or design?

"  X      Yes             _____      No

*"If your answer to Question 7 is yes, then answer Question 8. If you answered no, move to Question 11.*

"8. Did the State of California/Caltrans fail to provide adequate warnings of the dangerous condition?

"  X      Yes             _____      No

"If so, did the failure to warn contribute to causing harm to Kevin Carpio?

"  X      Yes             _____      No

*"If your answer to both options in Questions 8 is yes, move on to Question 11. If you answered no to either option in Question 8, then move on to Question 9.*

"9. Did the subject roadway become dangerous because of a change in physical conditions?

"_____      Yes             _____      No

*"If your answer to Question 9 is yes, then answer Question 10. If you answered no, enter a zero next to the State of California/Caltrans' name in Question 16 and then move to Question 11.*

"10. Did the State of California/Caltrans have actual or constructive notice of the dangerous condition created because of the change in physical conditions?

"_____      Yes             _____      No

20

*"If your answer to Question 10 is yes, then answer Question 11. If you answered no, enter a zero next to the State of California/Caltrans' name in Question 16 and then move to Question 11.*

"11. Was [the driver of the vehicle that struck Plaintiff] negligent?

"_____  Yes    __X__  No

*"If your answer to Question 11 is yes, then answer Question 12. If you answered no, enter a zero next to [the driver's] name in Question 16 and then move to Question 13.*

"12. Was [the driver's] negligence a substantial factor in causing harm to Kevin Carpio?

"_____  Yes    _____  No

*"If your answer to Question 12 is yes, answer Question 13. If you answered no, enter a zero next to [the driver's] name in Question 16 and then move to Question 13.*

"13. Was plaintiff Kevin Carpio negligent?

"_____  Yes    __X__  No

*"If your answer to Question 13 is yes, then answer Question 14. If you answered no, enter a zero next to Kevin Carpio's name in Question 16, and then move to Question 15.*

"14. Was plaintiff Kevin Carpio's negligence a substantial factor in causing his harm?

"_____  Yes    _____  No

*"If your answer to Question 14 is yes, then answer Question 15. If you answered no, enter a zero next to Kevin Carpio's name in Question 16, and then move to Question 15.*

"15. What are Kevin Carpio's damages? Do not reduce the damages based on the fault, if any, of the State of California/Caltrans, [the driver], or Kevin Carpio.

    "a. Past economic loss

        "i. Past lost earnings         $    5,686

        "ii. Past medical expenses    $2,097,679

    "Total Past Economic Damages:   $2,103,365

    "b. Future economic loss

        "i. Future lost earnings     $1,599,377

        "ii. Future medical expenses  $6,036,105

        "iii. Other future economic loss

                          $  450,000

    "Total Future Economic Damages:  $8,085,482

    "c. Past noneconomic loss, including loss of enjoyment of life and pain and suffering:

                          $ 2,000,000

    "d. Future noneconomic loss, including loss of enjoyment of life and pain and suffering:

                          $12,000,000

    "Total Damages: $24,188,847

   "*Answer Question 16.*

"16. What percentage of responsibility for Kevin Carpio's harm do you assign to the following? Insert a percentage for only those who received 'yes' answers in Question Nos. 5, 12, and/or 14. Do not enter a percentage next to a party if you were already instructed to enter a zero next to that party's name:

        "The State of California/Caltrans    100%

        "[The driver]                      0%

        "Kevin Carpio                   0%"

Based on the foregoing special verdict, the court entered a judgment and, days later, an amended judgment. All that is at issue in this appeal is the amended judgment (Judgment)—in favor of Plaintiff and against Caltrans in the amount of $24,188,847 and in favor of the driver and against Caltrans.[12]

### 5. *Postjudgment Proceedings*

Caltrans filed a motion to vacate the Judgment pursuant to Code of Civil Procedure section 663. Caltrans relied on the answers to the special verdict (in particular, the answers to question Nos. 1, 5, 6, and 7), by which the jury found that the dangerous condition in the case was a substantial factor in causing harm to Plaintiff and was included in the plan or design of the Project. Caltrans argued that, based on these findings, the court was required to apply the statutory design immunity provided in section 830.6; and an application of that defense required the court to enter judgment in favor of Caltrans. The court denied the motion (Section 663 Order). As we explain at footnote 16, *post*, because there is no appeal from this order, it is not before us for appellate review.

Nonetheless, the Section 663 Order was properly designated and included in the record on appeal; and it explains the trial court's reasoning. The court first concluded that, based on its legal ruling (as to the reasonableness of the approval process of the plans and design of the Project) and the jury's answers to the special verdict questions (in particular, Nos. 6

---

[12] Without a record reference, Caltrans tells us that the City of Sunnyvale and the County of Santa Clara settled with Plaintiff. The parties tell us nothing about the owner of the vehicle. Neither the city, the county, nor the owner is mentioned in the Judgment; and there is no issue on appeal related to any of these parties.

& 7[13]), a finding of section 830.6 design immunity was "*compelled.*"[14] (Italics added.)  Then, acknowledging that the "verdict form is not a masterpiece of clarity," the court gave as an example that "there was no good reason [for the verdict form] to direct the jurors to skip over questions 9 and 10, the answers to which very well *might have found* loss of design immunity"—a finding that would have been "justif[ied]" based on the evidence presented.[15]  (Italics added.)  From there, the court ruled that, because the special verdict did not "direct the jurors to find a design related defect or not," the verdict form allowed the jury to find liability "on several separate and independent bases."  The court then concluded that the jury must have intended a finding of loss of design immunity, since it "found virtually every potential form of liability against [Caltrans] and then confirmed that liability with a substantial damages award."

As part of the Section 663 Order, the court also granted Caltrans's motion to authorize periodic payments of the Judgment under section 984. Eight months later, based on the order authorizing periodic payments,

---

[13]    By its answers to question Nos. 6 and 7, the jury necessarily found that the dangerous condition that was a substantial factor in causing harm to Plaintiff was "in the plan or design for the roadway."

[14]    According to the court:  "Indeed, even [P]laintiff does not dispute the finding of design immunity."

[15]    The jury followed the instructions on the special verdict, which required the jury to skip question Nos. 9 and 10.  Had the jury answered those questions in the affirmative, arguably the findings would have supported Plaintiff's claim that, as a result of a change in the physical conditions that were approved in the plan or design, Caltrans's section 830.6 design immunity defense would have been lost.  (See *Alvarez, supra*, 79 Cal.App.4th at p. 737.)

24

Plaintiff filed a motion under section 984 to enforce the terms of the payment schedule and to compel Caltrans to pay 50 percent of the Judgment. The trial court denied Plaintiff's motion (Postjudgment Order).

D.    *The Appeals*

Caltrans timely appealed from the Judgment.[16] That commenced what is now case No. D078583. Plaintiff timely cross-appealed, and the cross-appeal is also part of what is now case No. D078583.

Plaintiff timely appealed from the Postjudgment Order. That commenced what is now case No. D078581.

In July 2021, we consolidated case Nos. D078583 and D078581.

## III. DISCUSSION

As we will explain, this court lacks jurisdiction to consider Plaintiff's cross-appeal from the Judgment; and, thus, we will dismiss it. We will next explain that, because the special verdict is ambiguous as to Caltrans, we will reverse the Judgment in part and remand for a new trial as to Caltrans; and we will otherwise affirm the Judgment. Finally, we will explain that, since

---

[16]    In its opening brief in D078583, Caltrans tells us that it also appealed from the Section 663 Order. However, (1) Caltrans provides no record reference for its statement; (2) the clerk's transcript contains no such notice of appeal; and (3) because Caltrans's notice of appeal is expressly limited to the judgment and the amended judgment, this appeal is necessarily so limited (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 [Cal. Rules of Court, rule 8.100(a)(2)'s rule of liberal construction is inapplicable where, as here, "the notice of appeal unambiguously designates" a specific document]). Thus, this court lacks jurisdiction to review the Section 663 Order. (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881 [timely notice of appeal " 'is an absolute prerequisite to the exercise of appellate jurisdiction' "].)

the Judgment is being reversed, the Postjudgment Order is moot; and, accordingly, we will vacate the Postjudgment Order and dismiss the appeal.

A.   *Plaintiff's Cross-Appeal from the Judgment (D078583)*

The rule of appellate standing is codified in Code of Civil Procedure section 902, which provides in part: "Any party *aggrieved* may appeal . . . ." (Italics added.)  "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 (*County of Alameda*).)  The "interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*Ibid.*)

"A party is not aggrieved by a judgment or order rendered in its favor" (*Gober v. Ralphs Grocery Co.* (2006) 137 Cal.App.4th 204, 211); and here there is a $24 million judgment in Plaintiff's favor.  Thus, for purposes of Code of Civil Procedure section 902, because Plaintiff is not aggrieved by the Judgment, Plaintiff lacks standing to appeal from the Judgment.

In the notice of appeal, Plaintiff states:  "The portion of this Judgment being appealed is the finding of the elements of design immunity, including, without limitation, the portion of the judgment, if any, based on the jury's findings in questions 6 and 7 of the Special Verdict."  Although the Judgment includes a copy of the special verdict, the Judgment itself does not contain any such "findings"; it directs a judgment in favor of the driver (and against Plaintiff) and a judgment in favor of Plaintiff (and against Caltrans) in an amount in excess of $24 million.

In the introduction to the opening brief in his cross-appeal, Plaintiff describes his presentation as a protective cross-appeal—namely, *if* the appellate court is inclined to reverse the Judgment based on Caltrans's presentation regarding question Nos. 6 and 7 of the special verdict (which

26

deal with § 830.6 design immunity), *then* the court should consider whether the record contains substantial evidence to "support the jury's finding of any dangerous condition that was approved in a plan or design." However, "[a] protective cross-appeal protects a party's right to appeal from the original judgment when the judgment is attacked *by a posttrial motion.*" (1 Cal. Civil Appellate Practice (Cont.Ed.Bar 3d ed. 2021), § 8.7, p. 8-5, italics added.) Here, Caltrans's appeal does not include a challenge to a ruling from a posttrial motion. (See fn. 16, *ante*.) Instead, where (as here) the respondent wants to raise an argument in support of the judgment on appeal, a "cross-appeal is neither necessary nor appropriate. The court of appeal will affirm if the trial court judgment is correct on any theory.[17] When the trial court's result is correct but its reasoning wrong, *new arguments should be raised in respondent's brief and not by cross-appeal.*" (1 Cal. Civil Appellate Practice (Cont.Ed.Bar 3d ed. 2021), § 8.4, p. 8-4, italics added.)

Since Code of Civil Procedure section 902's standing requirement is jurisdictional and since Plaintiff lacks standing to appeal from the Judgment, we lack jurisdiction to consider Plaintiff's cross-appeal and must dismiss it. (See *County of Alameda*, *supra*, 5 Cal.3d at p. 737.)

That said, as we just explained, the respondent may raise any argument on appeal that establishes the judgment is correct on any theory. Stated differently, pursuant to Code of Civil Procedure section 906, a

_____

17    "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

respondent may "assert[ ] an alternate legal theory upon which the judgment may be affirmed, notwithstanding the court's resolution of the appellant's contentions in the appellant's favor." (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 586.)

Here, in the cross-appeal, Plaintiff raises a substantial evidence argument, and Caltrans fully responds to it. Thus, Caltrans will not be prejudiced by our consideration of Plaintiff's substantial evidence argument. For this reason, we will consider the substantive argument raised by Plaintiff in his cross-appellant's opening brief as part of his respondent's brief in Caltrans's appeal from the Judgment. Correspondingly, we will consider the substantive argument raised by Caltrans in its cross-respondent's brief as part of its appellant's reply brief in its appeal from the Judgment.[18]

B.    *Caltrans's Appeal from the Judgment (D078583)*

In its appeal from the Judgment, Caltrans does not contend that Plaintiff failed to prove liability against Caltrans (a public entity) caused by a dangerous condition of its property for purposes of section 835. Stated differently, Caltrans does not challenge that the jury's answers to special verdict question Nos. 1, 5, 2, and 3, respectively, established the following necessary elements for liability under section 835: The onramp "was in a dangerous condition at the time of the injury"; the injury was "proximately caused by the dangerous condition"; the kind of injury that occurred was "reasonably foreseeable" as a consequence of the dangerous condition; and a

---

[18]    We will not consider the arguments raised by Plaintiff in his cross-appellant's reply brief, since that would be unfair to Caltrans. As the appellant, Caltrans has the burden of establishing reversible error on appeal (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609) and, therefore, the right to have the final word in seeking a reversal of the Judgment.

public employee, within the scope of employment, created the dangerous condition by a "negligent or wrongful act or omission," and the public entity had "actual or constructive notice of the dangerous condition" a sufficient time before the injury to have taken reasonable measures to protect against the dangerous condition.[19]

In its appeal, Caltrans challenges the trial court's failure to apply the statutory design immunity provided by section 830.6. According to Caltrans, the jury's answers to special verdict question Nos. 6 and 7, respectively, established the following elements necessary for the application of section 830.6 design immunity to the dangerous condition found by the jury in question No. 1: "a causal relationship between the plan or design and the accident"; and "discretionary approval of the plan or design prior to construction."[20] (*Cornette, supra*, 26 Cal.4th at p. 66.) Caltrans further contends that the jury made no additional findings that design immunity had been lost.

As a result, Caltrans argues, the trial court erred in entering the Judgment in favor of Plaintiff. This error, Caltrans continues, requires a

---

[19]   In this latter regard, section 835 requires a finding *either* that an employee of the public entity created the dangerous condition by a negligent or wrongful act or omission *or* that the public entity had actual or constructive notice of the dangerous condition in sufficient time to have taken protective measures. Here, in response to special verdict question No. 3, the jury found both.

[20]   As introduced *ante*, the third element necessary to establish design immunity is the reasonableness of the adoption of the plan or design. (*Cornette, supra*, 26 Cal.4th at p. 66.) Here, the court found that Caltrans met its burden as to this element of the defense, and there is no issue on appeal related to this ruling of the court.

reversal of the Judgment and a remand with directions to enter a judgment in favor of Caltrans. Alternatively, Caltrans contends that, because the special verdict made findings requiring application of design immunity yet awarded damages, the verdict is inconsistent, which requires a reversal of the Judgment and a remand for a new trial.

1. *Law*

A special verdict is one "by which the jury find[s] the facts only, leaving the judgment to the Court." (Code Civ. Proc., § 624.) The purpose of a special verdict is for the jury to determine the ultimate facts of each claim or defense in the case, so that "nothing shall remain to the Court but to draw from them conclusions of law." (*Ibid*.) To the extent there is an ambiguity in the special verdict after the jury is discharged, the court must " 'interpret the verdict from its language considered in connection with the pleadings, evidence and instructions.' " (*Woodcock v. Fontana Scaffolding & Equipment Co.* (1968) 69 Cal.2d 452, 456 (*Woodcock*); accord, *Fuller v. Dept. of Transportation* (2019) 38 Cal.App.5th 1034, 1038 (*Fuller*) [consider pleadings, evidence, instructions, and arguments].) "The correctness of a special verdict is analyzed as a matter of law and is subject to de novo review." (*Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 689.)

Relying on *Fuller*, *supra*, 38 Cal.App.5th 1034, Plaintiff argues that we should review the special verdict as if it were a general verdict and, under the standard of review of a general verdict, draw "all inferences . . . to support the jury's findings against Caltrans." We disagree.

In *Fuller*, the plaintiff tried the case on the theory that, for purposes of public entity liability under section 835, there were two dangerous conditions which were substantial factors in causing harm to him. (*Fuller*, *supra*, 38 Cal.App.5th at p. 1039.) As in the present case, the special verdict form did

30

not ask the jury to determine which of the two conditions was dangerous. (*Ibid.*)  In answering the special verdict questions, the jury found (1) there was a dangerous condition, but (2) the dangerous condition did not create a reasonably foreseeable risk of the kind of injury that occurred.[21]  (*Id.* at p. 1038.)  The trial court entered judgment in favor of the defendant, and the plaintiff appealed.  (*Id.* at p. 1036.)  On appeal, the plaintiff argued that the special verdict findings were fatally inconsistent because the jury did not identify which of the dangerous conditions did not create a reasonably foreseeable risk.  (*Id.* at p. 1038.)

*In reviewing the special verdict de novo* (*Fuller, supra,* 38 Cal.App.5th at p. 1038), the appellate court explained that, "[b]ecause the special verdict form did not ask the jury to decide the issue with specificity, the jury finding on dangerous condition is tantamount to a general verdict and all reasonable inferences are drawn to support it" (*id.* at p. 1039).  Applying this standard, the appellate court affirmed the judgment for the defendant public entity on the basis that substantial evidence supported the jury's finding that the dangerous condition did not create a reasonably foreseeable risk of the injury the plaintiff suffered.  (*Ibid.*)  Any other ruling, according to *Fuller*, would have resulted in the conclusion that "once the jury found a dangerous condition, there was no reason to proceed with [the] other questions [as] they are superfluous."  (*Id.* at p. 1040.)  Likewise, here, Plaintiff's position results in the conclusion that, once the elements of a section 835 claim are

---

[21]   By contrast, in the present case, the jury found *both* that (1) there was "a dangerous condition," *and* (2) "the dangerous condition" created a reasonably foreseeable risk of the kind of injury that occurred.

established, there is no reason to proceed with defenses, including section 830.6 immunity.

Because the problem with the special verdict in *Fuller* is different than the problem with the special verdict in the present appeal, *Fuller* is inapplicable as to the standard of review.  In *Fuller*, the issue was whether the jury considered different dangerous conditions for different elements of the plaintiff's section 835 liability claim.  (*Fuller, supra,* 38 Cal.App.5th at p. 1040.)  By contrast, in the present appeal, the issue is whether the jury considered different dangerous conditions for purposes of Plaintiff's section 835 liability claim (for which Plaintiff had the burden of proof) and Caltrans's section 830.6 defense (for which Caltrans had the burden of proof).

"A special verdict is inconsistent if there is no possibility of reconciling its findings with each other." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357.)  " 'A court reviewing a special verdict does not infer findings in favor of the prevailing party' "; that is because " 'there is no presumption in favor of upholding a special verdict when the inconsistency is between two questions in a special verdict.' " (*Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 124 (*Trejo*).)  " ' " 'Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error.' " ' " (*Singh*, at p. 358.)  Because " '[t]he appellate court is not permitted to choose between inconsistent answers,' " "[t]he proper remedy for an inconsistent special verdict is a new trial." (*Ibid.*)

2.    *Analysis*

Caltrans's principal argument is that Caltrans is entitled to judgment as a matter of law, because the jury found each element necessary for the court to apply statutory immunity under section 830.6.  More specifically,

Caltrans relies on the jury's findings that "the onramp from northbound Lawrence Expressway to southbound U[.]S[.] 101 [was] in a dangerous condition at the time of the accident" (special verdict question No. 1), and "the dangerous condition that was a substantial factor in causing harm to plaintiff [was] in the plan or design for the roadway" (special verdict question No. 6).

For all purposes, by its answer to special verdict question No. 1, the jury found that "*the onramp* from northbound Lawrence Expressway to southbound U[.]S[.] 101 [*was*] in *a dangerous condition* at the time of the accident." (Italics added.) With that initial understanding, we reach two conclusions:

1. By its answers to special verdict question Nos. 1, 2, 3, 4, 5, and 8, the jury found each element necessary for an application of section 835 liability to a public entity for "*the dangerous condition*" (italics added); and

2. By its answers to special verdict question Nos. 6 and 7, in addition to the court's ruling as to the reasonableness of the approval process of the plan, the jury found each element necessary for an application of section 830.6 design immunity for "*the dangerous condition*" (italics added).

The issue, therefore, is: After finding "the onramp" to be "in *a* dangerous condition," what did the jury intend to be "*the* dangerous condition" when it found both liability and immunity for "*the* dangerous condition"? (Italics added.) With the form of the special verdict and a record containing multiple potentially dangerous conditions, there is no way of knowing whether *the* dangerous condition for which the jury awarded damages was *the* same dangerous condition for which the jury found immunity. Very simply,

contrary to Caltrans's mantra, we cannot conclude that the jury considered only one—i.e., the same—dangerous condition (of the many presented by Plaintiff) in answering all of the questions on the special verdict.

Therefore, as we explain, the special verdict is "hopelessly ambiguous," which "*require*[*s*]" a reversal. (*Woodcock*, *supra*, 69 Cal.2d 452, 457, italics added; *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092.) In short, by failing to ask the jury to identify *the* dangerous condition on which it based its findings, neither party appreciated the potential for the inconsistency in the verdicts that resulted by allowing the jury to consider a different dangerous condition in response to each question.[22]

Caltrans's position is that, because the special verdict consistently asks questions regarding "*the* dangerous condition" (italics added), there can be only one dangerous condition; and since the jury found all elements necessary for an application of design immunity to "*the* dangerous condition" (italics added), the trial court erred in not applying the defense to the dangerous condition found by the jury. We disagree. The jury was not instructed that it could only consider *one* dangerous condition; and the first special verdict question asked only whether "the onramp" was "in *a* dangerous condition." (Italics added.) Given the evidence, the arguments of counsel, and no instruction to the contrary, the jury was entitled to find section 835 liability based on one dangerous condition and section 830.6 immunity for a different dangerous condition.

_____

22     Based on the trial court's comments prior to counsel presenting their closing arguments, we understand the form of the special verdict to have been prepared and submitted jointly by Plaintiff and Caltrans.

Plaintiff first argues that Caltrans forfeited appellate review of the special verdict, because Caltrans did not object to the form of the special verdict or request clarification or further deliberation before the jury was discharged.  (Citing *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1681 (*Mesecher*); *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 263-265 (*Keener*).)  We disagree.

*Mesecher* involved a situation where the court found that the appellant had made a deliberate strategic choice in submitting a jointly drafted special verdict form.  (*Mesecher, supra*, 9 Cal.App.4th at p. 1687.)  However, there is no evidence of such gamesmanship here.  (See also fn. 22, *ante*.)  This distinction is significant, since a forfeiture of appellate review "is not found where the record indicates that the failure to object was not the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.' " (*Woodcock, supra*, 69 Cal.2d at p. 456, fn. 2.)

*Keener* involved a situation where the appellants raised the issue of incomplete polling of the jury (as opposed to inconsistent findings).  (*Keener, supra*, 46 Cal.4th at p. 262; see *id*. at p. 268, fn. 27 ["An 'inconsistent' verdict is one that is *internally* inconsistent—not merely a verdict as to which the polling was incomplete"].)  By contrast, where (as here) the appellant claims reversible error based on an inconsistent special verdict, the appellant is not required to raise the issue in the trial court before the jury is discharged. (*Trejo, supra*, 13 Cal.App.5th at p. 123, fn. 4.)

Substantively, Plaintiff contends that, because the jury found Caltrans's negligence to be a substantial factor in causing harm to Plaintiff (special verdict question Nos. 3, 4, 5), such findings necessarily include the failure to maintain and the failure to warn—which are not subject to section 830.6's design immunity defense.  (See *Mozzetti v. City of Brisbane*

(1977) 67 Cal.App.3d 565, 575 [design immunity does not apply to claim of negligent maintenance]; *Flournoy v. State* (1969) 275 Cal.App.2d 806, 811 (*Flournoy*) ["design immunity . . . is limited to a design-caused accident"].) Thus, Plaintiff's argument continues, the special verdict is not inconsistent. We disagree.

Special verdict question No. 1 asked the jury to determine whether "*the onramp* from northbound Lawrence Expressway to southbound U[.]S[.] 101 [was] in a dangerous condition at the time of the accident." (Italics added.) At trial, both parties and the jury proceeded with the understanding that "the onramp" included both design and non-design-related conditions.[23]

In closing argument, Plaintiff's counsel emphasized as "dangerous" the conditions that Plaintiff contended were a result of Caltrans's failures to maintain the property (in particular, the overgrown shrubbery and faded paint) and to warn of the dangers of the crosswalk. For purposes of Caltrans's design immunity defense, counsel referred to the Project plans and argued that there is "no design for faded crosswalks or [overgrown] shrubbery." Consistently, for purposes of answering the special verdict question (No. 6) whether "the dangerous condition" was in the plans or design for the Project, counsel explained: "I think that's an easy 'No,' because a failure to maintain is not in the plan or design." In talking about question No. 1, however, counsel explained that the evidence supported a finding of *numerous* dangerous conditions *in addition to* a failure to maintain. Counsel

_____

23    On appeal, in his "Statement of Evidence at Trial," Plaintiff selectively discusses only the evidence related to non-design conditions of "the onramp" that he attributed to Caltrans.

explained that, for purposes of determining whether, at the time of the accident, "*this onramp*" was "a dangerous condition" (question No. 1): "*This onramp* includes the onramp, crosswalk, the shrubbery, the lack of signs . . . [, and the] lack of shark teeth." (Italics added.)

In this latter regard, in Caltrans's rebuttal argument, Caltrans's attorney told the jury that, for purposes of answering special verdict question No. 1, the components that Plaintiff's attorney described as being part of "the onramp" involved only design-related conditions:

> "On the . . . issue of design immunity, basically, there's two elements that are involved in play here. One deals with: . . . w[ere] the features that Plaintiff is complaining about that caused this accident [—] that is[,] the foliage, the crosswalk in relation to the crest, and the signage — were those present on the plans? [¶] And I would say yes, they were. [¶] . . . [¶] So was the crosswalk located [*sic*] included in the plans? Yes. [¶] . . . [¶] Was the foliage included on plans? Yes. [¶] . . . [¶] Was the vertical curve [which included the crest] shown on the plans? Yes. [¶] . . . [¶] The sign plan . . . shows the general location of . . . the signs. [¶] The lighting plan, with the overhead lights, that's [an identified trial exhibit]. [¶] *So all of those features were present in the plans*." (Italics added.)

Given the pleadings, the evidence at trial, the court's instruction to the jury, and the closing arguments of counsel, based on our de novo review, we do not know which condition(s) of the onramp the jury found to be dangerous (for purposes of public entity liability under § 835) and which dangerous condition(s) of the onramp the jury found were in the plans or design for the Project (for purposes of design immunity under § 830.6). For this reason, the verdict is hopelessly ambiguous.

Caltrans argues that, based on the jury's finding "the dangerous condition" was included "in the plan or design for the roadway" (special verdict question No. 6), it is entitled to judgment as a matter of law. We

37

disagree. As we explained *ante*, the failure to have asked the jury to identify "the dangerous condition" leaves us without the ability to determine which of the potentially dangerous conditions the jury considered to be included in the plan or design for purposes of design immunity.[24] Thus, at best, the inconsistency results in a hopelessly ambiguous verdict.

Plaintiff's remaining arguments do not convince us otherwise.

### a. *Inconsistent Findings*

Plaintiff argues that the jury's findings are not inconsistent, because once the jury found that the negligence of Caltrans employees created the dangerous condition (special verdict question No. 3) and the dangerous condition was a substantial factor in causing harm to Plaintiff (special verdict question No. 5), "liability for a non-design related dangerous condition was established." We disagree. Plaintiff's argument assumes that the negligence occurred after completion of the Project. However we do not know that, and we may not infer that (*Trejo*, *supra*, 13 Cal.App.5th at p. 124), since there is the possibility the jury believed the plans or designs contained a dangerous condition as a result of the negligence of Caltrans employees.

Caltrans argues that the jury's answer to special verdict question No. 6 (design immunity) requires the conclusion that whatever condition the jury found to be dangerous (special verdict question No. 1), the jury found the same condition to be "in the plan or design for the roadway" for purposes of question No. 6. In response, Plaintiff presents what he considers "another reasonable interpretation of the verdict which would explain the jury's 'yes'

---

24    We disagree with Plaintiff's unsupported statement that, "[f]rom a practical standpoint," a special verdict form that required the jury to identify the dangerous condition(s) could not have been drafted.

38

answers to Questions 6 and 7."[25]  According to Plaintiff, this *other* reasonable interpretation requires us to accept Plaintiff's explanation that "[t]he trial judge was in the best position to interpret the jury verdict since he . . . viewed the *conflicting testimony* from Caltrans' experts and its . . . witnesses as it related to the crest and placement of the crosswalk lines." (Italics added.)  The trial court, however, may not weigh conflicting evidence in order to avoid an inconsistent verdict.  (*Singh, supra,* 186 Cal.App.4th at p. 357.)

> b. *Negligence of Caltrans*

Plaintiff next focuses on special verdict question Nos. 3, 4, and 5, by which the jury found, respectively:  Caltrans employees "create[d] the dangerous condition"; Caltrans failed to "act[ ] reasonably in failing . . . to protect against the risk of injury"; and "the dangerous condition [was] a substantial factor in causing harm to . . . Carpio."  Based on these three findings, Plaintiff argues that they "did not have any bearing on the jury's answers to Questions 6 and 7 [regarding design immunity], since the [three findings] had nothing to do with a plan or design."  We disagree.  As we concluded *ante*, without knowing which dangerous condition the jury was considering when it answered any of the special verdict questions, we cannot conclude that the dangerous condition in the jury's answers to question Nos. 3, 4, and 5 is a *different* dangerous condition than the jury considered in answering question Nos. 6 and 7.

---

[25]    By this argument, Plaintiff acknowledges that there are multiple "reasonable interpretation[s] of the [special] verdict" that result in different outcomes.

39

Further, we reject Plaintiff's suggestion that the findings regarding negligence necessarily apply to a failure to maintain, such that certain physical conditions which were approved in the plan or design changed (see *Alvarez, supra,* 79 Cal.App.4th at p. 737). Based on the instructions on the special verdict, the jury was told *not* to answer the questions related to whether the roadway "bec[a]me dangerous because of a change in physical conditions"; and we may not infer findings to support the Judgment. (*Trejo, supra,* 13 Cal.App.5th at p. 124.)

Code of Civil Procedure section 624 requires that the jury's findings "must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." We are unable to do so here, and the trial court erred in determining otherwise by entering the Judgment.[26]

### c. *Failure to Warn*

By its answers to special verdict question Nos. 6 and 7, the jury made findings that established the elements necessary for an application of

_____

[26] For example, in the Section 663 Order, the court explained that, based on the jury's answers to the special verdict questions, "Failure to maintain is within the scope of and consistent with the special findings of the jury." By that ruling, the court necessarily determined that the jury found the failure to maintain to be "the dangerous condition." However, failure to maintain is not the only dangerous condition that is within the scope of and consistent with the jury's findings.

Likewise, we reject Caltrans's suggestion that, because the jury found that the dangerous condition was in the plan or design (special verdict question No. 6), the jury necessarily failed to find a failure to maintain (*unanswered* special verdict question No. 9). Given the evidence, the arguments of counsel, and the form of the special verdict, we cannot conclude that, had the jury answered special verdict question No. 9 (asking about failure to maintain), the jury would have been considering the same dangerous condition that it considered in answering special verdict question No. 6 (finding design immunity).

statutory design immunity (§ 830.6) to "the dangerous condition." Relying on section 830.8,[27] Plaintiff contends that Caltrans's failure to post a sign of a hidden dangerous condition—i.e., a concealed trap—"create[d] *an independent basis for liability*" for the dangerous condition that is otherwise subject to design immunity. (Italics added.)

We disagree. Section 830.8 does not provide an independent basis of liability. To the contrary, " '[a] public entity is not liable for injuries except as provided by statute (§ 815) and . . . section 835 sets out the *exclusive conditions* under which a public entity is liable for injuries caused by a dangerous condition of public property.' " (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129, italics added, quoting *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.)

Section 830.8 provides public entities with "a limited immunity" for "exercising their discretion in the placement of warning signs described in the Vehicle Code." (*Kessler v. State of California* (1988) 206 Cal.App.3d 317, 321.) A public entity loses this protection and may be liable for injuries, however, when it fails to provide traffic signals or signs of a type other than

_____

27    Section 830.8 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

those described in section 830.4[28] that "constitute[ ] a concealed trap for those exercising due care, assuming the conditions of its liability under section 835 are otherwise met."[29]  (*Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1537; accord, *Pfeifer v. San Joaquin County* (1967) 67 Cal.2d 177, 184 [the trap exception to § 830.8 immunity is inapplicable unless a dangerous condition under § 835 "is first shown" to exist].)  A concealed trap, and thus potential liability for the public entity, may result where "the physical characteristics of the site create a hidden hazard that in the absence of suitable warning devices would not be anticipated and could endanger careful motorists or pedestrians[.]" (Van Alstyne, *op. cit. supra*, § 12.78, p. 12-112.)

The issue in this appeal is whether the concealed trap exception to the limited immunity provided in section 830.8 precludes application of the design immunity provided in section 830.6.  Plaintiff argues that it does (i.e., § 830.8 allows for liability based on the failure to warn of a hidden trap, even where the trap is part of a dangerous condition subject to design immunity);[30] and Caltrans argues that it does not (i.e., where the trap is

---

[28]    Section 830.4 provides:  "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code."

[29]    As argued by the parties without discussion, we will assume without deciding that the failure to warn of a pedestrian crosswalk is covered by section 830.8 (not by § 830.4).

[30]    Plaintiff suggests that "the fact the lines [of the crosswalk] were incorrectly painted behind the crest" is the dangerous condition that resulted

42

part of a dangerous condition subject to design immunity, § 830.8 does not provide an independent basis for liability). As we explain, Caltrans has the better position.

In *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, the plaintiff argued that a sight restriction on a bridge created a trap, precluding design immunity under section 830.6. (*Compton*, at p. 595.) In affirming a summary judgment in favor of the city, this court recognized the trap exception to the limited immunity provided in section 830.8, but held that it did not create an exception to design immunity under section 830.6:

> "While section 830.8 states that immunity for failure to provide warning signs does not apply where there is a dangerous hidden condition, it in no way purports to create an exception to design immunity under section 830.6. It would be illogical to hold that a public entity immune from liability because the design was deemed reasonably adoptable, could then be held liable for failing to warn that the design was dangerous." (*Compton*, at p. 600.)

Likewise, in *Weinstein v. Dept. of Transportation* (2006) 139 Cal.App.4th 52, the Sixth District held that, where a public entity is entitled to section 830.6 design immunity for "each of the[ ] aspects of the roadway's design" that the plaintiff claimed is a dangerous condition, the absence of a sign warning of a hidden dangerous condition is not an exception to the limited immunity provided in section 830.8. (*Weinstein*, at p. 61.)

Plaintiff's authorities do not convince us otherwise.

In *Flournoy*, *supra*, 275 Cal.App.2d 806, the trap at issue was part of an allegedly dangerous condition that was *not design-related* for purposes of an application of design immunity under section 830.6. (*Flournoy*, at p. 813

---

in a trap for which section 830.8 allows a claim for failure to warn. Plaintiff lists five other "conditions," but none would have allowed or required signage.

["design immunity is not an available defense" for the dangerous condition].) Being factually distinguishable, *Flournoy* is inapplicable here.

In *Cameron*, *supra*, 7 Cal.3d 318, the dangerous condition was a highway curve with an uneven superelevation (or "banking") that a driver exercising due care would not perceive. (*Id.* at p. 323.) This condition would trap a driver into thinking the curve continued to the left, while in fact it continued to the right. (*Ibid.*) There was no warning sign indicating the proper speed to safely negotiate this curve. (*Ibid.*) The court first ruled that, on the record presented, the defendant was not entitled to section 830.6 design immunity for the dangerous curve because the uneven superelevation was not part of the design. (*Cameron*, at p. 326.) On remand, the defendant was not precluded from producing additional evidence to show that the superelevation was subject to design immunity under section 830.6. (*Cameron*, at p. 327, fn. 11.) For the guidance of the trial court on remand, the Supreme Court noted that, to the extent the defendant relied on section 830.8 for the limited immunity related to signage, the plaintiff was entitled to argue the hidden trap exception to the defense. (*Cameron*, at pp. 327-329.) Contrary to Plaintiff's argument in the present appeal, however, we do not read *Cameron* as ruling that the plaintiff in that case had an independent basis of liability under the hidden trap exception if design immunity ultimately did apply to the superelevation of the curve on remand.

In *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82 (*Anderson*), the appellate court first concluded that the city was entitled to design immunity for an allegedly dangerous highway curve. (*Id.* at pp. 90-91.) Instead of affirming the judgment for the city, however, the court relied on *Cameron*, *supra*, 7 Cal.3d at page 329, and held that the plaintiffs had an independent ground of liability for failure to warn of a dangerous condition.

44

(*Anderson*, at pp. 91-92.) We believe the *Anderson* court's reliance on *Cameron* was misplaced, because—as we explained in the previous paragraph—we do not read *Cameron* as ruling that a plaintiff would have a cause of action for failure to warn in this situation.

The last case on which Plaintiff relies is *Tansavatdi v. City of Rancho Palos Verdes* (2021) 60 Cal.App.5th 423, review granted Apr. 21, 2021, S267453. There the court held that "design immunity does not, as a matter of law, preclude liability under a theory of failure to warn of a dangerous condition." (*Id.* at p. 441.) As in *Anderson*, *supra*, 65 Cal.App.3d at pages 91-92, *Tansavatdi* stated that it was relying on *Cameron*, *supra*, 7 Cal.3d at page 329, for its holding. (*Tansavatdi*, at pp. 441-442, review granted Apr. 21, 2021, S267453.) Again, as we explained in our discussion of *Cameron* and *Anderson*, *ante*, we do not read *Cameron* as either holding or suggesting that section 830.8 provides a plaintiff with an independent claim for failure to warn in this situation.

Finally, Plaintiff argues that the failure to warn also applies to dangerous conditions *not* subject to design immunity. We reject this contention, since it requires us to infer a finding—namely, that "the dangerous condition" for purposes of special verdict question No. 8 was one not subject to design immunity—which we may not do in our de novo review. (*Trejo*, *supra*, 13 Cal.App.5th at p. 124.)

### d. *Harmless Error*

Plaintiff next argues that, if this court concludes the special verdict is fatally inconsistent—as we just have—any such error is harmless. We disagree.

Trial court error alone does not entitle Caltrans to relief on appeal. For the error to require a reversal, an appellant like Caltrans must also

establish prejudice (Code Civ. Proc., § 475) that results in a "miscarriage of justice" (Cal. Const., art. VI, § 13) as a result of the error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 (*Pool*).) A "miscarriage of justice" may be found on appeal " ' "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*Ibid.*; accord, Code Civ. Proc., § 475.)

In the context of this appeal, " ' "a result more favorable to the appealing party" ' " (*Pool, supra*, 42 Cal.3d at p. 1069; accord, Code Civ. Proc., § 475) means a judgment not based on an inconsistent verdict—not necessarily, as Plaintiff suggests, a judgment in favor of Caltrans. To accept Plaintiff's argument would require this court to choose between the jury's inconsistent answers to special verdict questions—which we may not do.[31] (*Singh, supra*, 186 Cal.App.4th at p. 358.) "[Plaintiff] is no more entitled than [Caltrans] to have the favorable verdict credited and the unfavorable one disregarded." (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1346.) Instead, "[t]he proper remedy for an inconsistent special verdict is a new trial." (*Singh*, at p. 358.)

---

[31] Plaintiff relies on *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228 for the proposition that "a defective special verdict did not require reversal because the error was harmless." The defect in that special verdict, however, was the failure to have asked the jury for findings on each element of the cause of action; and in its de novo review, the court concluded that, based on the overwhelming evidence in support of the plaintiff's claim, the error was harmless. (*Id.* at pp. 1244-1246.) By contrast, here, the defect is a hopelessly ambiguous special verdict.

e.     *Substantial Evidence*

Plaintiff argues that substantial evidence does not support "the jury's finding of any dangerous condition that was approved in a plan or design." Because we " ' " 'must presume that the record contains evidence to support every finding of fact,' " ' " as the party challenging the sufficiency of the evidence, Plaintiff has the " 'burden . . . to identify and establish deficiencies in the evidence.' " (*Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1326 (*Holguin*).)  This requires, at a minimum, that Plaintiff, as the party challenging the sufficiency of the evidence, set forth in his brief *all* the material evidence on the point (before establishing that it is not substantial). (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*).) " 'Unless this is done the error assigned is deemed to be waived.' " (*Ibid.*)  In this regard, "the point" for which Plaintiff is required to set forth the material evidence is whether "the dangerous condition . . . [was] in the plan or design for the roadway."  Here, Plaintiff sets forth and challenges *only* the sufficiency of the evidence to support a finding that "the crosswalk was designed to be placed behind the crest." (Capitalization and bolding omitted.) In doing so, Plaintiff failed to meet his burden.

First, by his argument, Plaintiff assumes that the jury based its finding of design immunity on the location of the crosswalk *relative to the crest*. However, that assumption is unsupported by the record, since there is no such finding in the special verdict.[32]

---

[32]     Moreover, there is no reason for Plaintiff to have assumed that the jury based its finding on the location of the crosswalk relative to the crest.  In arguing to the jury that the "onramp" was "in a dangerous condition," Plaintiff's counsel explained that the onramp included both the "onramp" and the "crosswalk" (and the lack of signage and shark teeth) *with no mention of the crest*.

47

Second, here, the jury found that "the dangerous condition . . . [was] in the plan or design for the roadway"; yet Plaintiff argued to the jury that *many* conditions—including, but not limited to, the shrubbery and signage—were dangerous for purposes of section 835. By limiting his evidentiary presentation on appeal to the placement of the crosswalk in relation to the crest, Plaintiff necessarily forfeited his substantial evidence argument. (*Foreman*, *supra*, 3 Cal.3d at p. 881.) "The reason for this is that 'if the [parties challenging the sufficiency of the evidence] fail to present us with all the relevant evidence, then [these parties] *cannot* carry their burden of showing the evidence was insufficient to support the [jury's finding] because support for that decision may lie in the evidence [these parties] ignore.' " (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072 (*Delta Stewardship Council*).)

Finally, by acknowledging in his appellate briefing on this issue that "there is a crosswalk shown on the plans," Plaintiff cannot establish a lack of substantial evidence that the placement of the crosswalk on the onramp was not included "in the plan or design for the roadway" for purposes of the jury's answer to special verdict question No. 6.

Even if we were to consider Plaintiff's condition-specific danger—i.e., the location of the crosswalk relative to the crest—the result would be no different. As we explain, substantial evidence supports the jury's finding that the plan or design of the roadway contains the dangerous condition.

For purposes of our substantial evidence review, " 'all conflicts must be resolved in favor of the [finding made], and all legitimate and reasonable inferences indulged in to uphold the [finding] if possible. . . . [W]hen a [finding] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial

48

evidence, contradicted or uncontradicted, which will support the [finding].' " (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571, quoting *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) " '[T]he test is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the [verdict].' " (*Dane-Elec Corp., USA v. Bodokh* (2019) 35 Cal.App.5th 761, 770.) "If this 'substantial' evidence is present, [it is of] no matter how slight it may appear in comparison with the contradictory evidence[.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 (*Howard*).) In determining the sufficiency of the evidence, we "may not weigh the evidence or consider the credibility of witnesses.' " (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118 (*Campbell*); accord, *Howard*, at p. 631.)

At trial, Caltrans's Project engineer testified that the location of the crosswalk was determined by specific information contained in the Project plans—namely, "the geometry of the interchange, location of the lanes, the location of the sidewalks, [and] the placement of the wheelchair ramps." More specifically, in trial exhibit No. 507—i.e., the as-built plans for the Project—he identified for the jury "the location of the crosswalk that's at issue in this case" in the plans, having just explained that the plans also directed the location of the vertical curve, which included the crest, on the onramp. Finally, the Project engineer testified that his signature on the as-built plans indicated that the plans were prepared under his supervision "according to standards" and the Project was "built according to the plans and according to the . . . California standards [at] that time." This is substantial

49

evidence in support of the finding (in response to question No. 6) that "the dangerous condition . . . [was] in the plan or design for the roadway."[33]

    f.    *New Trial*

As we explained *ante*, "[t]he proper remedy for an inconsistent special verdict is a new trial." (*Singh*, *supra*, 186 Cal.App.4th at p. 358.)

Plaintiff argues that, in the event a new trial is ordered, the retrial should be limited to "the narrow issues raised" in Caltrans's opening brief on appeal. Without identifying what Plaintiff considers to be "the narrow issues" raised by Caltrans, he suggests that there is no need to retry "the question of Plaintiff's damages or the question of fault attributable to the driver or Plaintiff." Caltrans disagrees, replying that, in the event of a new trial, *all* issues must be retried.

In ordering a retrial, the appellate court has the power to limit the issues to be retried, but only where those " 'issue[s] can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.' " (*Torres v. Automobile Club of Southern California* (1997) 15 Cal.4th 771, 776.) A partial (as opposed to full) new trial should be ordered " 'only if it is clear that no injustice will result . . . [, and] any doubts should be resolved in favor of granting a complete new trial.' " (*Liodas v. Sahadi* (1977)

---

[33]    Plaintiff criticizes this and other related evidence as being insufficient to contradict the Project engineer's earlier deposition testimony and/or unsupported by the specific pages of the trial exhibit on which he based his testimony. By this argument, Plaintiff asks us to consider purportedly contradictory testimony, determine a witness's credibility, and weigh documentary versus oral evidence—none of which is allowed in reviewing the record for substantial evidence (*Howard*, *supra*, 72 Cal.App.4th at p. 631; *Campbell*, *supra*, 32 Cal.3d at p. 118).

19 Cal.3d 278, 285-286.) In exercising this discretion, our principal consideration is the potential "prejudice to the litigants." (*Torres*, at p. 776.)

As we explain, there is no need to retry Plaintiff's cause of action for negligence against the driver of the vehicle; and we will affirm the Judgment as to him. *All* claims and defenses between Plaintiff and Caltrans are to be retried.

### i. *The Driver*

With regard to the driver, Caltrans argues that a new trial is necessary, because without knowing "whether [the driver] caused or contributed to Plaintiff's injuries[, . . .] liability and immunity as to Caltrans could not be separately retried without confusion, uncertainty and prejudice." For a number of independent reasons, we decline to reverse the Judgment and order a new trial as to the driver.

First, because Caltrans failed to serve the driver with its appellate brief in which it requested a new trial as to the driver (or anything else it filed in this appeal), Caltrans's position is patently unfair and prejudicial to the driver.[34]

Second, the entirety of Caltrans's argument as to "confusion, uncertainty and prejudice" in the event of no retrial as to the driver reads as follows: "A retrial that informed the jury that it had already been determined that [the driver] was not at fault would unfairly prejudice Caltrans by making the jury more inclined to find Caltrans liable." (Citing authority only for the proposition that doubts on the scope of retrial be

---

[34] Based on this lack of service, the court inquired of the parties their understanding of the driver's status in the litigation. In response, the parties advised the court that Plaintiff settled with the driver and that the driver is not a party to the appeal.

resolved in favor of a full new trial.) However, Caltrans has provided no explanation or legal authority to support how or why a jury would be "more inclined to find Caltrans liable" if the driver is not a defendant. As such, Caltrans forfeited appellate review of the issue. (*Delta Stewardship Council*, *supra*, 48 Cal.App.5th at p. 1075 [where a party on appeal fails to provide "reasoned argument and citations to authority, we treat the point as forfeited"]; Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported "by argument and, if possible, by citation of authority"].)

Even if we considered the merits of Caltrans's position, the result would be no different.

In the complaint, Plaintiff alleged two distinct and severable causes of action: a common law claim for negligence against the driver (and another party who is not mentioned in the special verdict, the Judgment, or the parties' appellate briefing); and a statutory claim against Caltrans (and other governmental entities not mentioned in the special verdict or the Judgment) for a dangerous condition of public property. Where "the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action," the judgment may be reversed only *in part*. (*Gray v. Cotton* (1913) 166 Cal. 130, 139.) Here, the claims and defenses related to the driver are "distinct and severable" from the claims and defenses related to Caltrans.

The driver is mentioned in only one of the special verdict questions answered by the jury (No. 11): "Was [the driver of the vehicle that struck Plaintiff] negligent?" The jury was not asked or required to make any additional findings as to the driver. Thus, the inconsistency in the special verdict is limited to Plaintiff's statutory claim for a dangerous condition of public property. The inconsistency has nothing to do with the driver, the

driver's alleged negligence, or Plaintiff's claim against the driver for common law negligence.

We will affirm the Judgment as to the driver.[35]

### ii. *Damages*

With regard to damages, Caltrans argues that a new trial is necessary due to Carpio's death during the pendency of the appeal. Caltrans contends that, following a reversal of the Judgment, Plaintiff's claim on retrial—now being prosecuted by the personal representatives of Carpio's estate (see fn. 1, *ante*)—will not support an award of non-economic damages. (Citing Code Civ. Proc., § 377.34.[36])

At a minimum, therefore, the parties present a valid dispute as to what damages may be recovered on retrial, and Plaintiff has not had an opportunity to respond to Caltrans's argument regarding non-economic damages. For this reason, on the limited record presented in this appeal, we decline to allow or limit the damages claimed. Thus, without deciding what damages may be sought on retrial, we leave for the trial court on remand the

---

[35] By precluding a retrial of Plaintiff's cause of action against the driver, we are not—as suggested by Caltrans—deciding that, at the retrial, the jury must be informed that the driver "was not at fault." We express no opinion as to what the jury will be informed; that is up to the trial court on remand.

[36] Code of Civil Procedure section 377.34 provides in part: "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, . . . and do not include damages for pain, suffering, or disfigurement."

responsibility of determining the issues associated with Plaintiff's statutory claim against Caltrans for a dangerous condition of public property.[37]

### iii. *Plaintiff's Negligence*

With regard to the jury's finding that Carpio was not negligent (in crossing the onramp), Plaintiff argues that, because there was "a full and fair trial" on issues associated with Plaintiff's negligence "and the only error Caltrans asserts is that the jury verdict is hopelessly ambiguous," there is no need to retry the alleged negligence of, and thus the allocation of fault attributable to, Plaintiff. We disagree.

Unlike the negligence of, and thus the allocation of fault attributable to, the driver—which was determined in a separate, severable cause of action—the negligence of Plaintiff is at issue, if at all, solely as an affirmative defense to the cause of action against Caltrans for a dangerous condition of public property. Since the Judgment is being reversed as to this cause of action (against Caltrans only), the entire cause of action, including Caltrans's potential affirmative defenses, should also be retried. Any other result would be unfair to Caltrans.

## C. *Plaintiff's Appeal from the Postjudgment Order (D078581)*

Plaintiff appealed from the Postjudgment Order. In the Postjudgment Order, the trial court denied Plaintiff's motion to enforce the terms of Caltrans's elected periodic payments to pay the Judgment. (§ 984.)

Upon issuance of the remittitur in this appeal, the Judgment will be reversed. When a judgment is reversed, "incidental matters, proceedings, or

---

[37] Nothing we say in this opinion is intended to influence the trial court's rulings on any of the issues or arguments that the parties may raise on remand.

claims based on the judgment are likewise nullified."  (9 Witkin, Cal. Proc. (5th ed. 2008) Appeal, § 869, p. 929; see, e.g., *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1027 [*as a matter of law*, "the award of costs necessarily falls with the [reversal of the] judgment"].)  Where, as here, an appeal has been taken from such incidental matters based on the judgment and the judgment is reversed, the appeal from the incidental matters "is moot and . . . must be dismissed."  (*Evans v. Southern Pacific Transportation Co.* (1989) 213 Cal.App.3d 1378, 1388.)

Accordingly, we will vacate the Postjudgment Order and dismiss Plaintiff's appeal from the Postjudgment Order.

## IV.  DISPOSITION

Plaintiff's cross-appeal is dismissed.  The Judgment is affirmed as to the driver, defendant Patrick Aubin.  In all other regards, the Judgment is reversed, and the matter is remanded for a new trial.  The Postjudgment Order is vacated, and Plaintiff's appeal from that order is dismissed.  The parties are to bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


IRION, J.

WE CONCUR:



McCONNELL, P. J.



DO, J.

56